STATE BANK of Lock Haven, Respondent, v. JAMES W. SMITH and WILBUR F. SMITH, Appellants, Impleaded with CHANDLER P. WAINWRIGHT and WILLIS BRYANT.

1. EXCHANGE OF PROMISSORY NOTES — CONVERSION OF ACCOMMODATION INTO BUSINESS PAPER. Where two parties exchange promissory notes for the same amount, made by them respectively, payable to the order of the other, and each uses the counterpart of his own note, by having it discounted for his own benefit, both notes are *ipso facto* converted from accommodation into business paper, each constitutes a good consideration for the other, and the maker of each becomes liable as a principal debtor.

2. ACCOMMODATION NOTES — SURETY — SUBROGATION. Where the notes received and discounted for his own benefit by one of the two parties to an exchange of a series of counterpart notes, made by each party respectively to the order of the other, are accommodation notes, as to

24

which the maker, not having used the counterparts received by him, is simply surety, knowledge of that relation by the discounting bank entitles the maker, upon payment of the debt and the insolvency of the payee of the notes, to all the rights, remedies and securities that the bank had with reference to the notes.

3. JUDGMENT NOTE AS COLLATERAL SECURITY. When a judgment note, received by a bank from the principal debtor on discounted notes, in a state, such as Pennsylvania, whose law permits such a contract, was given as collateral security for the performance of numerous prior contracts entered into by the principal debtor, it is not to be deemed, as regards one standing in the relation of surety to the notes, as having been received in payment of the principal debt or as a substitute therefor, but merely as a concurrent security.

4. COLLATERAL SECURITY. A judgment entered upon a judgment note, given as collateral security, is necessarily a security of the same general nature, and so, also, are the avails of an execution sale upon such judgment; and the original indebtedness continues unmerged and unchanged, except so far as the proceeds of the sale were applied, or should have been applied, thereon.

5. DUTY OF BANK TO SURETY. A bank, holding a judgment against a principal debtor not simply for its own security, but also for the indemnity of the surety on notes discounted for the principal debtor, owes the surety the duty of dealing in good faith with its judgment, and of doing nothing to impair such security to the prejudice of the surety's rights.

6. DUTY OF BANK TO SURETY. The duty imposed upon the bank, under such circumstances, is not an active, but a negative duty, as it is simply bound not to cancel, waste or impair its security; and if the surety wishes to control the judgment held by the bank as collateral security, it is his duty to pay the debt and obtain subrogation *pro tanto* to the collateral.

7. SUBSTITUTION OF SECURITY. A surety is not released by the substitution, by the creditor, of one collateral security for another, when made in good faith and apparently for the benefit of all concerned.

8. SUBSTITUTION OF SECURITY. A surety is not released by the exchange, by a creditor bank, of a judgment against an insolvent principal debtor, whose property has been exhausted, for an agreement by its president individually to pay the debt out of the proceeds of the property of the debtor purchased by him at execution sale, after he has realized enough to pay an indebtedness to himself, when no bad faith appears and it is not shown that the substituted security was worth less than the judgment.

*State Bank* v. *Smith*, 85 Hun, 200, affirmed.

(Argued February 4, 1898; decided March 1, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the first judicial department, entered March

21, 1895, affirming a judgment in favor of plaintiff entered upon the report of a referee.

This action was brought to recover the amounts alleged to be due upon twelve promissory notes.

Between the 21st of June and the 17th of September, 1889, the firm of J. W. & W. F. Smith, doing business in Brooklyn, executed and delivered twelve promissory notes, aggregating $13,911.24 in amount, to the firm of Wainwright & Bryant, doing business in Philadelphia, and the latter firm procured the same, before maturity, to be discounted by the plaintiff, a banking corporation organized under the laws of Pennsylvania, and doing business at Lock Haven in that state. These notes were delivered by J. W. & W. F. Smith on receipt by them of corresponding notes made by Wainwright & Bryant of even date, tenor and effect, each inclosed in a letter requesting that duplicates be sent. The notes of the Brooklyn firm were payable in this state, while those of the Philadelphia firm were payable in Pennsylvania. These two sets of notes were thus delivered under an agreement of some years standing, made for the accommodation of Wainwright & Bryant, that either firm had the right to use for its own benefit any of the notes delivered to it by the other, and that Wainwright & Bryant should protect J. W. & W. F. Smith and furnish them the money to pay their notes as they matured, unless they had used some of the notes of the other firm and had given notice to that effect. Between 1884 and 1889 many notes passed between the two firms under this agreement. When corresponding notes in the two series had both been used, each firm paid the note made by itself. Wainwright & Bryant always used the notes intrusted to them by J. W. & W. F. Smith, but the latter rarely used the notes intrusted to them by Wainwright & Bryant, although they did in a few instances, one of which was a note dated August 6, 1889, for $1,145.13, which was discounted for J. W. & W. F. Smith by the Eleventh Ward Bank of New York. When the Philadelphia firm furnished the Brooklyn firm money to pay the notes of the former, the latter returned the cor-

responding notes. Each firm kept its agreement with the other until the 24th of October, 1889, when Wainwright & Bryant failed, and thus became unable to furnish J. W. & W. F. Smith with money to pay their notes, which were then held by the plaintiff, and the latter firm, on hearing of the failure, took up said note of August 6, 1889, no notice having been given that it had been used, and has ever since held all the notes of the last series made by the former firm.

At the time of their failure Wainwright & Bryant owed one William A. Simpson, the president of the plaintiff, $50,000, for which he held their judgment note, dated November 14, 1884, payable one day after date. He also held two judgment notes given by them as security for indorsements made by him for their accommodation, the one dated January 14, 1885, for $60,000, and the other, dated August 19, 1887, for $75,000, each due one day after date. At the same time they owed the plaintiff $122,313 for notes made or indorsed by them and discounted by it, including those made by J. W. & W. F. Smith as aforesaid, but not including those indorsed by Simpson; and on October 24, 1889, in anticipation of their failure, they gave to the plaintiff, as collateral security to their liability to it, through said Simpson and one Corss, the attorney for the bank, a judgment note for that amount, due in one day. Said note was delivered to Mr. Simpson, who had the physical possession and control thereof. According to the laws of the state of Pennsylvania, judgment notes, such as those mentioned, may be given and used as collateral security for a present debt, or as security to the payee for a liability incurred, or to be incurred, by the payee for the maker, and judgment may be entered thereon and enforced although the indebtedness has not matured, or the liability incurred by the payee remains contingent, and any attorney may confess judgment for the maker of such a note. On October 26, 1889, Mr. Corss confessed separate judgments, which were entered in Jefferson county, Pennsylvania, on all of said judgment notes against the makers and in favor of the respective payees, and issued executions thereon. In entering the judgments he

acted as attorney of record both for the plaintiff and Mr. Simpson. The three judgments in favor of Simpson aggregated $190,550, although the amount of his claims, both fixed and contingent, was about $135,000. Corss, by direction of Simpson, entered his judgments first and issued executions on them first, in order to give him priority over the bank, the law of the state being that, as to personal property, the execution first issued takes precedence, while, as to real estate, all judgments entered on the same day share equally in the proceeds of a sale thereof. The personal property of the judgment debtors in Jefferson county, when sold November 30, 1889, realized $67,533.82, and the real estate $26,490. All of the real estate and all of the personal property, except to the amount of $5,000, was bid in by Simpson, who paid nothing to the sheriff, but the proceeds were credited on his judgments, except that as president of the bank he receipted for $12,000, the share of the bank in the net avails of the realty, although it was not paid either to him or the plaintiff. Mr. Simpson was the largest stockholder of the plaintiff and acted for it in procuring said judgment note. He was closely connected with Wainwright & Bryant, advised them in their business, received a percentage upon a portion thereof for his advice, and was well informed as to their financial transactions. Prior to the 24th of October, 1889, the plaintiff had knowledge through said Simpson, its president, who had practical control of the matters of the bank, that said notes were made by the Messrs. Smith for the accommodation of Wainwright & Bryant, and that they were not given for value. Since October 24, 1889, there has been collected by the plaintiff on notes held by it, on which Wainwright & Bryant were liable, excepting the twelve made by the defendants Smith and notes indorsed by said Simpson, the sum of $36,035. The further sum of $5,000 was realized by the plaintiff from certain stock in a cattle company, delivered to it by Wainwright & Bryant, which sum was applied generally by the plaintiff upon their indebtedness to it. The plaintiff also realized upon the sale under its judgment of certain real property

owned by Wainwright & Bryant, or one of them, in the county of Philadelphia, the sum of $5,000, which was credited by it in like manner.

On the 30th of January, 1890, the plaintiff assigned to Simpson its judgment against Wainwright & Bryant, " and all money due or to become due thereon, to be collected by said Simpson * * * for his own benefit." Subsequently, and about a year later, Simpson executed and delivered to the plaintiff an agreement, reciting many of the foregoing facts, and also that Wainwright & Bryant have failed and " are no longer believed to be responsible ;" that the deeds for the real estate sold had been made to Simpson, and the purchase money receipted for by him *pro rata* on the judgments in favor of himself and the plaintiff ; that the bank's judgment had been assigned to him " the better to enable him to secure the acknowledgment and delivery to him of the sheriff's deed, without the payment of the purchase money to the sheriff ;" and that it was known that after the bank had received from Simpson its *pro rata* share of the proceeds arising from the sale of real estate in Jefferson county, and had received all other proceeds from the sale of collaterals and the collection of all collectible notes, there would be a deficiency of assets to pay the indebtedness of Wainwright & Bryant to the bank. After these recitals the instrument provided that, in consideration of the conveyance of the real estate in Jefferson county to Simpson, and the payment of the purchase money for the same, " which was done at the special instance and request of the said William A. Simpson," and in consideration of one dollar by him paid to the bank, " and for other good and valuable considerations to him paid by the State Bank," the said Simpson agreed to pay the bank " the full amount of the indebtedness of Wainwright & Bryant to the said bank as drawers or indorsers of notes discounted by said bank, not otherwise paid or secured, to be paid to the said bank out of the proceeds of the sale of the real and personal property of Wainwright & Bryant, sold in Jefferson county, and purchased by the said William A. Simpson, after or as he shall sell and convert the same. It being understood

that the same William A. Simpson is to pay said indebtedness to the said State Bank only after he has, by the sale of said real estate and personal property, and by the sale of the lumber, mineral, oil, gas, etc., in and upon same, and by the sale, transfer or assignment of other property, real, personal and mixed, of the said Wainwright & Bryant, realized sufficient to pay the amount of Wainwright & Bryant's indebtedness to him, after deducting the necessary and proper charges and expenses."

The notes sued upon in this action were the third renewal of the original series, made pursuant to an arrangement between Wainwright & Bryant, the said Smiths and the plaintiff, with the consent of Simpson, but without knowledge on the part of the Messrs. Smith that the plaintiff had realized any moneys upon its judgment, although they knew of the recovery thereof, or that the execution in favor of Simpson had been given precedence over the bank's judgment. The plaintiff still holds notes, "making a part of said sum of $122,313, to the extent of about $82,858.08, which said notes have not been paid" by an actual application of money realized from any source upon them. No part of the notes involved in this action has been paid, except as stated.

The referee before whom the case was tried found the foregoing facts in substance, and also found "that said Simpson was to pay the bank the proper share of the proceeds to which the bank was entitled, and the assignee of said judgment assumed a position at that time of accountability to the bank, the exact nature of which was not defined;" that since October 24, 1889, there has been paid to the plaintiff of the notes held by it, on which Wainwright & Bryant were liable either as indorsers or makers, excepting such as were indorsed by Simpson, and excepting the twelve notes made by the Messrs. Smith, the sum of about $36,500, leaving unpaid thereon $63,231.16, which is uncollectible, and that, at the time of the purchase by Simpson of such real and personal property sold by the sheriff in Jefferson county, he had no specific agreement with the plaintiff that it was to have any interest therein.

The referee found as conclusions of law that the defendants Smith were accommodation makers of the original notes, and were sureties as between themselves and Wainwright & Bryant, who were the principal debtors, except that the note of August 6, 1889, for $1,145.13, and the renewal thereof was business paper; that the plaintiff is the lawful holder and owner of the renewals of said notes; that the amount realized by the plaintiff from the sale of the real property in Jefferson and Philadelphia counties and from the sale of the cattle stock is in equity applicable *pro rata* upon all the unpaid notes which said judgment note of $122,313 was given to secure; that the parties to the notes in question are entitled to the same rights and equities as if the original series had not been renewed, but was still unpaid in the bank; that the defendants Smith are entitled to have the sum of $3,389.48 credited upon the principal of the eleven notes in suit, and that the plaintiff is entitled to judgment for the balance, including the whole of the twelfth note.

Judgment was entered accordingly for the sum of $12,878.61 damages, including interest, and, after an affirmance by the General Term, the defendants Smith appealed to this court

*Abel E. Blackmar* for appellants.    The judgment obtained by the bank upon the note merged the entire liability of Wainwright & Bryant to the bank, including their liability on the twelve notes involved in this action.    (Colebrook on Col. Sec. § 2; *W. Bank* v. *Webb*, 39 N. Y. 325; *McMaster* v. *Vernon*, 3 Duer. 249; *Peters* v. *Sanford*, 1 Den. 224; *Hill* v. *Beebe*, 13 N. Y. 556; *Toussaint* v. *Martinnant*, 2 D. & E. 100; *Butler* v. *Miller*, 1 N. Y. 496; *Roosevelt* v. *Marble*, 6 Johns. Ch. 266.)    Whatever may have been the original relation of the judgment to the series of notes, whether it merged Wainwright & Bryant's liability on them or not, it became, when assigned to William A. Simpson, the principal obligation of Wainwright & Bryant as between the parties to the transfer, and no action can be maintained by the bank on the series of notes while Simpson remains the owner of the judgment.

(*Battle* v. *Coit,* 19 Barb. 68; *Battle* v. *Coit,* 26 N. Y. 404; *Teaz* v. *Chrystie,* 2 E. D. Smith, 621; *Fitch* v. *McDowell,* 80 Hun, 207; *Fitch* v. *McDowell,* 145 N. Y. 498; *O. Nat. Bank* v. *Fant,* 50 N. Y. 474; *Holmes* v. *D'Camp,* 1 Johns. 34; *Burdick* v. *Green,* 15 Johns. 247; *Armstrong* v. *Cushney,* 43 Barb. 340; *Hays* v. *McClurg,* 4 Watts, 452; *Small* v. *Jones,* 8 Watts, 265.) The assignment of the judgment to William A. Simpson and the contract from Simpson in lieu thereof discharged the sureties from every liability to the bank. (*Townsend* v. *Whitney,* 75 N. Y. 425; *Shutts* v. *Fingar,* 100 N. Y. 539; *Lewis* v. *Palmer,* 28 N. Y. 271; *Hays* v. *Ward,* 4 Johns. Ch. 122; *Speiglemyer* v. *Crawford,* 6 Paige, 254; *Mathews* v. *Aiken,* 1 N. Y. 595; Willard's Eq. Juris. [Potter's ed.] 110, 111; 2 Brandt on Suretyship, §§ 301, 426, 434; Colebrook on Col. Sec. §§ 212, 239; Tiedeman on Com. Paper, § 424; Chitty on Cont. [11th Am. ed.] 284; 1 Story's Eq. Juris. § 325; *Ducker* v. *Rapp,* 67 N. Y. 464; *Calvo* v. *Davies,* 73 N. Y. 211; *Bangs* v. *Strong,* 10 Paige, 11; 7 Hill's Rep. 250; 4 N. Y. 315; *Boyd* v. *McDonough,* 39 How. Pr. 389.) The judgment, considered as a purely collateral security, was *prima facie* worth its face value; the burden of proving its actual value rested upon respondent. In the absence of such proof or finding the sureties are entitled to be discharged to the extent of the face value thereof. (2 Brandt on Suretyship, § 426; *Underhill* v. *Palmer,* 10 Daly, 478; *Fielding* v. *Waterhouse,* 8 J. & S. 424; *Hubbell* v. *Carpenter,* 5 N. Y. 171; *Dunn* v. *Parsons,* 40 Hun, 77; *Lewis* v. *Armstrong,* 80 Ga. 402; *Holt* v. *Bodey,* 18 Penn. St. 207; *Guild* v. *Butler,* 127 Mass. 386; *American Bank* v. *Baker,* 4 Metc. 164; *Hawks* v. *Hinchcliff,* 17 Barb. 492; *Booth* v. *Powers,* 56 N. Y. 22; *Griggs* v. *Day,* 136 N. Y. 152.) The assignment of the judgment representing the principal debt of Wainwright & Bryant carried with it, as accessory thereto, the right to proceed against defendants Smith, and the bank became the real party in interest and entitled to satisfaction of the debt. (*Dillenbeck* v. *Dygert,* 97 N. Y. 303; 2 Black on Judg. § 948.) As the assignment of the judgment to Simpson suspended

the right of the bank to proceed against Wainwright & Bryant upon the series of notes, it also suspended its right to proceed against defendants Smith. (2 Smith L. C. 292.) The fact that this action was brought upon renewals of the series ·of notes held by the bank at the time of the assignment of the judgment does not deprive defendants of their equitable defense. (*Pence* v. *Langdon,* 99 U. S. 578; *Newbery* v. *Furnival,* 56 N. Y. 638; *Robertson* v. *M. L. Ins. Co.,* 88 N. Y. 441; *Bennecke* v. *Ins. Co.,* 105 U. S. 355; *Nat. Bank* v. *Lewis,* 75 N. Y. 516; *Chester* v. *Bank of Kingston,* 16. N. Y. 336; *Winsted Bank* v. *Webb,* 39 N. Y. 325.) If the judgment was collateral merely according to the strict meaning of the word, the conduct of the bank through its president, Simpson, and attorney, Corss, in procuring to Simpson a priority over the bank and confirming it by the assignment and contract, discharged the sureties to the extent of their *pro rata* share in the personal property seized under the execution. (*Hayes* v. *Ward,* 4 Johns. Ch. 130; *Mayhew* v. *Crickett,* 2 Swanst. Ch. 185; *Underhill* v. *Palmer,* 10 Daly, 478; *Chester* v. *Bank of Kingston,* 16 N. Y. 336; *Hall* v. *Haxey,* 84 Ill. ·616; *Strange* v. *Fooks,* 9 Jur. [N. S.] 943; *Am. Bank* v. *Baker,* 4 Metc. 164; *Kressig* v. *Allspaugh,* 91 Cal. 231; *Phares* v. *Barbour,* 49 Ill. 370.) The referee erred in finding the note for $1,145.13, set forth in the 6th cause of action in the complaint, was business paper given by defendants to Wainwright & Bryant for value, and directing judgment for the full amount thereof. The defendants were sureties and entitled to sureties' rights. (*Ward* v. *Howard,* 88 N. Y. 74; *Dichman* v. *Robeson,* 37 N. Y. S. R. 215; *Grow* v. *Garlock,* 97 N. Y. 81; *M. S. Bank* v. *Pierce,* 137 N. Y. 444; *Guild* v. *Butler,* 127 Mass. 386; *Bridenbecker* v. *Lowell,* 32 Barb. 9; *Saxton* v. *Peat,* 2 Camp. 185; *Colgrove* v. *Tallman,* 67 N. Y. 95; *Palmer* v. *Purdy,* 83. N. Y. 144; *Hubbard* v. *Gurney,* 64 N. Y. 457.)

*Frederick H. Man* for respondent. The judgment note to the bank having been given as, and intended for,. collateral

security only, the judgment entered upon it was nothing more than a collateral security, and did not merge the notes held by the bank, and, therefore, the assignment of that judgment to Simpson did not carry with it the notes of which those in suit are renewals. (*Quincey* v. *White*, 63 N. Y. 370; *Baldwin* v. *Doying*, 114 N. Y. 452; *Powell* v. *W. V. M. Co.*, 8 Wkly. Notes of Cas. [Pa.] 293; *A. F. & M. Ins. Co.* v. *Boies*, 6 Duer, 583; *Sheldon* v. *Edwards*, 35 N. Y. 279; *Davis* v. *Anable*, 2 Hill, 339; *Day* v. *Leal*, 14 Johns. 404.) The assignment of the judgment to Simpson, and Simpson's contract with the bank, discharged appellants only if they were accommodation makers of the notes in suit, and even then only to the extent of their interest in the amount which the judgment was worth. (*Barhydt* v. *Ellis*, 45 N. Y. 111; *Vose* v. *F. R. R. Co.*, 50 N. Y. 369; *Griggs* v. *Day*, 136 N. Y. 152.) Under all the circumstances, the appellants, even though accommodation makers of the notes sued on, have no defense thereto by reason of the priority obtained by the Simpson judgments. (*Nat. Bank of Newburgh* v. *Smith*, 66 N. Y. 271; *F. Nat. Bank of B.* v. *Wood*, 71 N. Y. 405; *Beardsley* v. *Warner*, 6 Wend. 610; *Smith* v. *Erwin*, 77 N. Y. 466; *N. Y. Nat. E. Bank* v. *Jones*, 9 Daly, 248; *S. Nat. Bank of O.* v. *Poucher*, 56 N. Y. 348; *Bd. of Supervisors* v. *Otis*, 62 N. Y. 88; *Clark* v. *Sickler*, 64 N. Y. 231; *Nat. Bank of N.* v. *Smith*, 66 N. Y. 271.) All the twelve notes, of which those sued upon are renewals, were business or exchanged paper, and, having been taken for value by plaintiff before maturity, are not open to any defense because of the receipt afterwards of collateral security from Wainwright & Bryant, and the referee erred in holding that but one of the notes was business paper. (*Rice* v. *Mather*, 3 Wend. 62; *Dowe* v. *Schutt*, 2 Den. 621; *Newman* v. *Frost*, 52 N. Y. 422; *Rice* v. *Grange*, 131 N. Y. 149; *Coburn* v. *Baker*, 6 Duer, 532; *Bassett* v. *Bassett*, 55 Barb. 506; 6 Alb. L. J. 166; 1 Daniels on Neg. Inst. §§ 178, 187; *Davis* v. *McCready*, 17 N. Y. 230; *Maas* v. *Chatfield*, 90 N. Y. 303.) The note for $1,145.13 (original dated August 6, 1889, renewal dated

August 15, 1890) was a good business note, for its counter-part was used by the Smiths and was actually owned by the Eleventh Ward Bank up to a time after the failure of Wain-wright & Bryant, and, therefore, while plaintiff held the origi-nal note. (*M. S. Bank* v. *Pierce,* 137 N. Y. 444.)

VANN, J.   We have stated the facts with great fullness, so that the effect of our decision can be seen, but we shall be brief in announcing our conclusions and in giving our reasons, because the most of the questions have been so fully discussed, both by the General Term and by the referee, as to leave little to be said by us.

The referee found, in accordance with the contention of the defendants, that eleven of the notes in question were accom-modation paper, and, as the plaintiff neither excepted nor appealed, both parties must accept that conclusion as unassail-able on this review.   The twelfth note, however, was not accommodation paper, because it was not held like the others as a memorandum or security, and there was a complete exchange of notes for the purpose of raising money. (*New-man* v. *Frost,* 52 N. Y. 422 ; *Dowe* v. *Schutt,* 2 Denio, 621 ; *Rice* v. *Mather,* 3 Wend. 62.)   The moment that the Messrs. Smith used the counterpart of their own note, both notes were *ipso facto* converted into business paper, and the makers of each became liable as principal debtors.   That act completed an actual exchange of notes for the mutual accommodation of the respective makers, and each note constituted a good considera-tion for the other. (*Rice* v. *Grange,* 131 N. Y. 149.)   The promise to notify was merely for convenience, and the failure to give notice was not vital, as the use of the note intrusted to the Messrs. Smith as security, in pursuance of the right reserved by them to do so, effected the change from accommo-dation into business paper and made it their duty to pay it. It was, however, the duty of Wainwright & Bryant to pay the other eleven, as to which the Messrs. Smith were simply sure-ties, of which fact the plaintiff, through its president, had notice, as the referee found and was warranted by the evidence in

finding. The existence of that relation between the original
parties to the paper, and knowledge thereof by the plaintiff,
entitled the makers, upon payment of the debt, to all the
rights, remedies and securities that the plaintiff had with refer-
ence to the notes. (*Hayes* v. *Ward*, 4 Johns. Ch. 123; *Grow*
v. *Garlock*, 97 N. Y. 81; Brandt on Suretyship, § 298.)
There is a sharp contest between the parties as to the nature
of the judgment note of the plaintiff and the judgment
rendered thereon. The plaintiff contends that they were col-
lateral security, as that term is ordinarily understood, while
the defendants contend that the notes upon which Wainwright
& Bryant were indebted to the bank and the judgment note
were different forms of contractual obligations for the same
aggegate amount of money, each obligation being supported
by the same consideration. It was within the power of the
contracting parties to agree that the judgment note should be
collateral security, especially since it is found as a fact that the
law of the state where the transaction took place permits such
a contract. The referee further found that the note upon
which said judgment was rendered was given to the plaintiff,
" as collateral security for such notes then held by the plain-
tiff, on which the said defendants, Wainwright & Bryant,
were liable as makers and indorsers  *  *  *  to secure the
plaintiff against loss upon such notes." This finding was not
excepted to by the defendants Smith, who are, therefore, not
in a position to challenge it as having no support in the evi-
dence, which, when carefully examined, clearly sustains the
finding. The judgment note was a separate and supplemen-
tary contract, designed to secure the performance of numerous
prior contracts entered into by Wainwright & Bryant, and, in
order to be adequate, was made for the amount of those con-
tracts when added together. It was not received in payment
of the principal debt, nor as a substitute therefor, and it was
not an additional right to which the bank was entitled, but
merely a concurrent security, voluntarily given by the princi-
pal debtors, to secure a precedent debt, and intended to
increase the means of the creditor to realize the principal debt

which it was given to secure. (*Munn* v. *M'Donald*, 10 Watts [Pa.], 270.) There was no merger of the notes held by the bank against the Messrs. Smith and others upon which Wainwright & Bryant were liable, in the judgment rendered upon the judgment note given as collateral, because the judgment was founded on that note and was necessarily a security of the same general nature. While the entry of judgment permitted the seizure and sale of property, the avails of the sale were still collateral security, although converted into money in readiness to be applied upon the original indebtedness. The object of the judgment note was to furnish a security, due at once, in convenient form to put in judgment immediately, for the purpose of obtaining a lien upon the property of Wainwright & Bryant as collateral security to their indebtedness to the bank, existing in the form of many different notes that were not yet due, and this, as it is expressly found, is sanctioned by the laws of Pennsylvania. The original indebtedness still existed unmerged and unchanged, except so far as the proceeds of the sale were applied, or should have been applied, thereon.

The plaintiff owed the defendants the duty of dealing in good faith with its judgment, which it held not simply for its own security, but for the indemnity of the sureties also, and to do no act to impair such security to the prejudice of their rights. Under the circumstances, this duty was not an active, but a negative duty, as the bank was simply bound not to cancel, waste or impair its security. (*Board of Supervisors* v. *Otis*, 62 N. Y. 88; *First National Bank* v. *Wood*, 71 N. Y. 405; *Mayhew* v. *Crickett*, 2 Swanst. 185.) If the sureties wished to control the judgment it was their duty to pay the debt and obtain subrogation *pro tanto* to the collateral. After all was collected on the judgment that was shown to be collectible, the bank assigned it to Mr. Simpson for the purpose, as the referee found, of enabling him to obtain a deed of the premises sold under the execution by crediting him thereon with the bank's share of the purchase price without actual payment thereof to the sheriff, and upon the understanding that he was to pay the

bank its proper share of the proceeds. Simpson also, as the: referee further found, assumed a position at the time of accountability to the bank, the exact nature of which was not then defined. Subsequently, however, it was defined by an arrangement between the bank and Mr. Simpson by which he agreed to pay it the full amount of its unsecured claims against Wainwright & Bryant, including the notes in question, out of the proceeds of the sale of both the real and personal property sold under the execution and purchased by Simpson, after he had realized enough to pay Wainwright & Bryant's indebtedness to him. The real nature of the transaction, therefore, was that the bank exchanged its judgment for Simpson's agreement to pay it the full amount of its claim against Wainwright & Bryant in the manner stated. There was no surrender, but a substitution of securities. One kind of collateral was exchanged for another, and there is neither finding nor evidence of bad faith, or that the substituted security was worth less than the judgment., The admission in the amended answer is that all of Wainwright & Bryant's property had been exhausted, and that they were insolvent. Hence the judgment of the bank was worth nothing, unless in the future they should acquire property that might be seized and sold. Under these circumstances, the referee could not find as matter of fact, and we cannot hold as matter of law, that the substituted security was worth less than the naked judgment against the insolvent debtors. The sureties were not injured in fact, nor were they injured in law, unless the exchange, under any circumstances, of one collateral security for another, is so inconsistent with the legal rights of a surety as to raise a conclusive presumption of injury therefrom. No authority has been cited, and we have been able to find none, holding that a surety may not in good faith endeavor to better his situation by exchanging one kind of collateral for another that he regards as more valuable. If a bank holds bonds of doubtful value as security for a note made by sureties for the principal debtor, may it not exchange those bonds for others that it regards of greater value without releasing the sureties? If it.

cannot, the law deprives it of the right to make the best use of its collateral that it can, and compels it to refrain from trying to better its condition, lest, although acting honestly and for what it regards as its own interest as well as the interest of the sureties, it may make a mistake to their detriment. The rule that a surety is discharged *pro tanto* through the surrender of security by the creditor does not rest on contract, but upon the equitable principle that the property of the debtor, pledged for the payment of the debt, should be applied on the debt. In such a case the surety is discharged to the extent that he is injured. A diversion of security which results in no injury to the surety does not affect his liability, for payment of the debt with the accompanying right of subrogation would be of no value. (*Blydenburgh* v. *Bingham*, 38 N. Y. 371.) In this case it was held that the relation of the creditor to the property released must possess more than a supposititious or imaginary value and advantage in order that the release shall discharge the surety from liability. The release of part of certain real estate, in order to make a title to one who purchased it for full value, upon condition that the purchase money should be applied to the extinguishment of a mortgage that was a prior lien upon the whole estate, was not held to release a surety, because the transaction bettered his condition rather than otherwise. (*Neff's Appeal*, 9 Watts & Serg. 36.) So the surrender of a life policy, held as collateral, upon receipt of its present value, after the principal had become bankrupt, and it was doubtful whether he would keep up the policy, did not discharge the surety. (*Coates* v. *Coates*, 33 Beavan, 249.) Where a creditor released a levy on property of the principal debtor worth $90, in consideration of an order worth $100, that could not have been reached by the execution, it was held that the surety was not discharged because he was benefited by the transaction. (*Thomas* v. *Cleveland*, 33 Mo. 126. See, also, *Commercial Bank* v. *Western Reserve Bank*, 11 Ohio, 444; *Moss* v. *Pettingill*, 3 Minn. 217; *Moss* v. *Croft*, 10 Mo. 720.)

The admitted insolvency of the principal debtors, and the sale of all their property, met the burden of proof that the law cast upon the plaintiff of showing that the judgment assigned to Simpson was worthless. The inclusion of the personal property, in which the bank had no interest, in the agreement, gave the sureties an advantage that they did not have before. As the effect of the release of collaterals is measured by the injury done to the surety, a substitution of one security for another, when made in good faith and apparently for the benefit of all concerned, should be governed by the same rule.

In view of the opinions below, we think that no further expression of consideration by us is called for, and that the judgment should be affirmed, with costs.

BARTLETT, HAIGHT and MARTIN, JJ., concur; PARKER, Ch. J., not sitting; O'BRIEN, J., not voting; GRAY, J., absent.

Judgment affirmed.