## No. 10,167.

THE WOLF COMPANY *v.* STATE BANK COMMISSIONER.

Decided June 5, 1922.   Rehearing denied July 3, 1922.

Action for breach of contract.   Judgment for defendant.

### *Reversed.*

1. BANKS—*Liability for Failure to Follow Instructions.*   Where a consignor of goods, forwards to a bank the bill of lading with instructions to deliver it to the consignee on compliance with certain requirements, and the bank fails to follow the instructions, it cannot escape liability for damages on the ground of ultra vires.

2. BANKS AND BANKING—*Instructions—Evidence.*   Evidence reviewed and held not to support the contention of a bank that it substantially followed instructions received, and was therefore not liable for damages caused by its alleged failure in that regard.

3. *Contract—Breach—Liability.*   Where a bank is instructed to deliver a bill of lading on compliance with certain requirements by consignee, and it fails to follow instructions, to the damage of the consignor, there is a breach of a valid contract for which the consignor is entitled to nominal damages at least, if not more, and the fact that the damaged party compromises his claim against the consignee does not affect his right to a verdict, but only the amount thereof.

   In such a case the bank is not in the position of a surety, it merely broke its contract; but even if a surety, it would have the burden of showing it was injured by the compromise.

*Error to the District Court of Montrose County, Hon. Thomas J. Black, Judge.*

Mr. HUGO SELIG, Mr. L. C. KINIKIN, for plaintiff in error.

Messrs. CATLIN & BLAKE, Messrs. MOYNIHAN, HUGHES, KNOUS & FAUBER, for defendant in error.

MR. JUSTICE DENISON delivered the opinion of the court.

THE Home State Bank was defendant below and a ver-

dict was directed in its favor.   The Wolf Company, plaintiff below, brings error.

The essential facts are as follows:

The Wolf Company shipped machinery to the Farmers' Mill & Elevator Company and mailed the bill of lading to the defendant bank with a sight draft for $1,367.90 and three unsigned notes for $980.10 each and with instructions to deliver the bill of lading on payment of the draft, execution of the notes and a mortgage securing them.

The letter of instructions contained the following:

*   *   *   The notes to be secured. by a first mortgage on the mill building and machinery, including the machinery furnished by our company.   *   *   *   Will you kindly have your attorney arrange the mortgage papers being careful to see that we are furnished with a first mortgage on the mill building and the machinery, including the machinery furnished by our company.   *   *   *   For your information will state that the usual charge made by banks for similar service is $10.00, which amount you may deduct from the amount of our draft, remitting to us for the balance."

There was evidence, which, since the verdict was directed, we must take as true, that the cashier of the bank did not employ an attorney, but himself drew a chattel mortgage and included therein the Elevator Company's mill building, that he then gave it to the secretary and general manager of that company for execution and acknowledgment but employed no attorney to see that this was properly done and did not himself see to it, but accepted it without an examination by an attorney.   The instrument was so improperly signed and acknowledged that we held it to be void as against subsequent incumbrancers without notice, *Best & Co. v. Wolf Co.*, 67 Colo. 42, 185 Pac. 371. On receipt of this mortgage with the signed notes and payment of the draft the bill of lading was surrendered, the $10 deducted and the balance remitted.   The Elevator Company afterwards became insolvent and its property ultimately reached the hands of a receiver.

After reversal and remand of the former case, the Wolf

Company, still claiming that its mortgage was valid, on the ground that Best & Company had had actual notice thereof, compromised for $1350 its claim upon the proceeds of the mortgaged property, which had in the meantime been sold by the receiver, and then brought the present suit against the bank for breach of contract in failing to obey its instructions.

The breaches alleged were that defendant did not have its attorney arrange the mortgage papers and was not careful to see that the plaintiff company was furnished with a first mortgage on the mill building and machinery, and failed and neglected to furnish plaintiff with a first mortgage on the mill building or a first mortgage on the machinery. The defenses were, in substance: 1. Ultra vires; 2. that the instructions were substantially followed; 3. that the plaintiff company compromised its suit against Best & Company. We are told by the briefs that upon 1 and 2 the court was with the plaintiff, but upon 3, the facts being undisputed, directed a verdict for the defendant.

As to ultra vires we think the court was right. The transaction is a very common one in banking, akin to the deposit of an escrow, a bill of lading or some other instrument to be delivered on receipt of money and documents "arranged" by (i. e. prepared by or under the oversight of) an attorney. There might be something in this objection if the bank itself had been required to determine the validity of the mortgage, but the instruction was to have an attorney do that.

As to the second point, we think the instructions are plain and unambiguous and were not substantially followed. As to the mortgage they were not followed at all. No attorney drew or passed upon the validity of the execution of the mortgage, and it actually was so insufficiently executed and acknowledged as to be of no value against subsequent incumbrancers without notice.

These considerations answer the third point. Since there was a valid contract and a breach thereof the plaintiff was entitled to nominal damages at least, (17 C. J. 720-727;

*Hammond v. Solliday,* 8 Colo. 610, 9 Pac. 781) ; even if not more. *Allen v. Conrad,* 51 Pa. 487, 490; *Swan v. Saddlemire,* 8 Wend. 676. The breach proved was surrender of the bill of lading without getting an attorney to oversee the mortgage. The mortgage was invalid in its principal purpose, that is, against subsequent innocent claimants, and even if Best & Company had actual notice of the mortgage and so would have been defeated in the former suit, still the contract was broken; the judgment in that case, therefore, was not an essential part of plaintiff's proof of a cause of action but went only to prove the amount of damages. The fact, then, that it was a compromise judgment had no effect on plaintiff's right to a verdict but only on the amount thereof. It follows that the court was wrong in directing the verdict.

We can see nothing in the bank's position that gives it the right of a surety. Its liability is not collateral to another's; it merely broke its own contract; but, even if the bank were a surety, it would have the burden of showing it was injured by the compromise. *North Ave. Sav. Bank v. Hayes,* 188 Mass. 135, 74 N. E. 311; *State Bank of Lock Haven v. Smith,* 155 N. Y. 185, 49 N. E. 680. But for all shown in the record it may be $1350 better off. *State Bank of Lock Haven v. Smith, supra.*

Reversed and Remanded.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE WHITFORD concur.