[No. 25715. Department Two. December 3, 1935.]

HOWARD H. HANSEN, *as Supervisor of Banking, Appellant,* v. P. E. SULLIVAN *et al., Respondents.*[1]

*Bausman, Oldham, Cohen & Jarvis,* and *Maurice Cooperman,* for appellant.

*John J. Sullivan* and *Everett O. Butts,* for respondents.

MAIN, J.—In the complaint in this case, there are three causes of action, separately stated, each based upon a promissory note signed by the defendant P. E. Sullivan, who will be referred to as though he were the only party defendant. The defendant appeared by answer and cross-complaint, and in the latter sought to recover damages against the plaintiff and have them offset against the liability on the notes. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the defendant was entitled to the relief

[1]Reported in 52 P. (2d) 895.

which he sought. From the judgment entered in accordance with the conclusions, the plaintiff appeals.

The appellant is the supervisor of banking for this state, and the American Exchange Bank of Seattle is in the process of liquidation. One James C. Cooper was engaged in business in the city of Seattle as a retail dealer of automobiles, and was personally acquainted with the respondent Sullivan.

On or about the 26th day of August, 1930, there arrived in the city of Seattle three automobiles which Cooper had ordered from the factory. The bills of lading, with the draft attached, were sent to the Pacific National Bank in that city. Cooper approached Sullivan and asked him to loan him sufficient money to take up the bills of lading and the draft in the sum of $2,700. Sullivan looked at the automobiles and concluded to make the loan.

He and Cooper then went to the Pacific National Bank, where Sullivan drew his check upon the American Exchange Bank for the amount of the draft, and the bills of lading were delivered either to him or to Cooper. These two then went to the American Exchange Bank, of which Sullivan had been a customer for many years. When they went to this bank, Sullivan, as he testified, told A. T. Drew, the cashier, of the transaction that he was having with Cooper and suggested the drawing of a chattel mortgage. As to what took place at this time, Sullivan testified:

". . . and I says, 'I want you to draw me up a mortgage on these cars,' and he says, 'Are you buying them?' I says, 'Yes.' He says, 'Both of them?' I says, 'Yes.' 'Do you want a bill of sale?' He says, 'That is the way we do. We just take a bill of sale, and when they are sold,' he says, 'We release them.' I says, 'I am going to keep them until next spring.' And he says, 'Well, that is all you need to do, is a bill of sale.' . . . And he says, 'That is the way

540

we do.' 'Well,' I says, 'I am going over to see Sulli-van, my lawyer.' He says, 'You don't need to see no lawyer, I will draw the papers up.' He says, 'I will take care of it and protect you.' So he drew the papers up and filed them that same day. And I went to Nebraska, and when I came back in November I went to James Cooper and says, 'Where is my cars?', and he says, 'On the floor.' So he pointed out three cars, and I supposed they were mine. And in the meantime he had sold my cars. . . . Q. Let me in-terject here a moment, Mr. Sullivan. Did the bank know that Cooper was dealing in cars? A. Yes, sir. They were doing business with him. Q. And you told them, did you not, that you were going to leave those cars there with Cooper until spring? A. Yes, sir.''

There is some conflict in the testimony as to whether the bill of sale was drawn by Drew or whether he di-rected an employee of the bank to draw it. There is also some conflict as to whether Sullivan filed the bill of sale of record or whether it was done by Drew, as Sullivan testified.

It will be observed that Sullivan, in his testimony, when asked the direct question, stated directly and unequivocally that he was buying the cars. Whether Drew, knowing that Cooper was engaged in the auto-mobile business and that the cars were to be left with him until spring, should have disbelieved Sullivan when he stated that he was buying the cars and under-stood that he was simply making a loan, is a matter that we shall pass without discussion or decision, as there is another ground upon which we prefer to rest this opinion.

At the time Sullivan and Cooper went to the American Exchange Bank, neither of them had any transaction with the bank. Apparently, they went in for the purpose of having a mortgage drawn, and there was nothing else connected with it. Sullivan subsequently brought an action to replevin one of the

automobiles, and, having lost in the superior court, appealed, and the judgment, holding that the defendant in the replevin action had received a good title, was affirmed in the case of *Sullivan v. Lewis,* 170 Wash. 413, 16 P. (2d) 834. It is the damage which he had sustained by reason of the bill of sale not protecting him as against a *bona fide* purchaser that Sullivan, in this action, sought to recover from the appellant.

Drew, in giving the advice that Sullivan should take a bill of sale rather than a chattel mortgage, was not acting for the bank, within the scope of its express powers or those which were necessarily incidental thereto.

In *Peoples Nat. Bank v. Finance Co.,* 192 N. C. 69, 133 S. E. 415, 48 A. L. R. 519, it was said:

"A corporation, organized and engaged in the banking business, whether under the National Bank Act or under the laws of the State, can assume no liability, without acquiring assets to offset the same. The interests not only of depositors and stockholders, but also of the public, can be safeguarded only by a rigid and consistent enforcement of this salutary rule. It has been held by this Court, both upon principle and upon uniform authority to that effect, that a banking corporation cannot lend its credit to another by becoming surety, endorser or guarantor for him."

The cases of *Farmers' & Merchants' Nat. Bank v. Smith,* 77 Fed. 129, and *Commercial Nat. Bank v. Pirie,* 82 Fed. 799, are to the same effect.

In *Myers v. Exchange Nat. Bank,* 96 Wash. 244, 164 Pac. 951, L. R. A. 1918A 67, it was held that the bank was not liable, either *ex contractu* or *ex delicto,* in failing to produce a will after the death of the testator, which had been left with it for safekeeping.

The advice which Drew gave to Sullivan, as the latter testified, was as to the legal effect of the instru-

ment drawn, which only one admitted to practice law had a right to give. A commercial corporation has no right to engage in the practice of law. *State ex rel. Lundin v. Merchants Protective Corp.*, 105 Wash. 12, 177 Pac. 694. As already indicated, the advice which Drew gave was beyond the express powers of the bank, and also beyond the powers necessarily incident to the banking business.

Our attention has been called to the case of *Wolf Co. v. State Bank Commissioner*, 71 Colo. 486, 208 Pac. 462, which is said in the respondent's brief to be "almost directly in point." In that case, the consignor of goods forwarded to the bank a bill of lading with instructions to deliver it to the consignee on compliance with certain requirements, and the bank failed to follow the instructions and was held liable for damages. With reference to the *ultra vires* defense of the bank, it was said:

"There might be something in this objection if the bank itself had been required to determine the validity of the mortgage, but the instruction was to have an attorney do that."

Taking the respondent's testimony at its face value, it does not show any liability under the law as against the bank.

The judgment will be reversed, with direction to dismiss the respondent's cross-complaint and enter judgment upon the appellant's complaint for the amount due upon the notes.

MITCHELL, BEALS, and BLAKE, JJ., concur.

HOLCOMB, J. (dissenting)—I dissent.

Drew was an officer of the bank, and his voice was the voice of the bank. Having been a customer of the bank for many years, Sullivan knew Drew well and placed implicit confidence in him. Sullivan told Drew

he wanted a mortgage, but Drew told what the practice of the bank was in such cases and persuaded him thereby to take a bill of sale. That was not "legal advice," but *banker's advice,* and such as they give to customers daily. When wrong, banks should be held liable and responsible, the same as other concerns.