## UNITED STATES v. AMERICAN OPTICAL CO. et al.

### Civ. A. No. 46, C 1333.

United States District Court
N. D. Illinois, E. D.
March 9, 1951.

See also 95 F.Supp. 771.

Willis L. Hotchkiss, Chief Midwest Office, Antitrust Division, Chicago, Ill., for the United States.

Dan Moody, Henry H. Brooks, Austin, Tex., Howard Ellis, Chicago, Ill., for defendants.

LA BUY, District Judge.

The above suit is a civil action filed by the United States against American Optical Company, an association, American Optical Company, a corporate subsidiary of the association, and certain named individuals. As to the individuals named as defendants, it is alleged: " * * * The individuals designated as defendants are fairly and adequately representative of a class of persons so numerous as to make it impracticable to bring all of them before the Court on the charges herein alleged, which involve all of the members of the class and against whom a common relief is sought."

The complaint alleges the class as having the following things in common: (1) all are physicians (commonly known as oculists) who specialize in the science of the eye and its diseases; (2) all, in their professional capacity, regularly make ophthalmic refractions for their patients, and on the basis of such refractions, prescribe ophthalmic lenses for the patients' eyes; (3) all regularly charge patients a professional fee for making ophthalmic refractions and for prescribing the type and power of ophthalmic lenses needed; (4) all refer patients to or have patients who take their prescriptions for ophthalmic lenses to a dispensing branch of defendant American to purchase spectacles or parts thereof as prescribed; and (5) all receive and accept from defendant American rebates or "credits" of part of the purchase price paid by patients.

Defendant American is alleged to be one of the two largest manufacturers of ophthalmic goods in the United States and operates approximately 254 wholesale branches throughout the United States. The offense charged is that since 1938 the defendants have continued an unlawful combination and conspiracy to fix the consumer price of spectacles and parts thereof sold to patients of the defendant doctors in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note; that through said combination and conspiracy (1) defendant American sells spectacles and parts thereof on prescription directly to the patients of the defendant doctors and collects a consumer price consisting of the prescription price plus a fitting fee plus a substantial amount for rebate; (2) said consumer price is as high as the local prevailing prices charged by optometrists and retail opticians; (3) American rebates to defendant doctors the difference between the prescription price, plus fitting fees, and the price collected from such patients by American, and defendant doctors accept said rebates which are customarily one-half the consumer price collected from the patient; (4) American refuses to sell to patients of doctors who turn rebates over to patients or who insist on reduction in charges to patients by the amount of the rebate; (5) defendants refrain from disclosing to patients of the defendant doctors the prescription price of spectacles and the fact of a rebate or its amount.

It is alleged defendant doctors during the time covered by the complaint have

entered into agreements and understandings with defendant American under which the defendant doctors have agreed (1) to refer or recommend patients to dispensing branches of defendant American to have prescriptions filled; (2) accept from defendant American a rebate or "credit" of the excess above the prescription price plus fitting fee collected by American from said patients; (3) refrain from turning over such rebates to their patients; and (4) refrain from disclosing to their patients the prescription price of spectacles or parts thereof purchased from American.

It is further alleged that such combination and conspiracy had the following effect: arbitrary and inflated consumer prices for spectacles have been fixed and maintained; patients have been forced to pay such inflated prices caused by rebates or "credits" given to defendant doctors; rebates or "credits" have been paid to said doctors, which amount to approximately one-half the consumer price paid by the patients; defendant doctors have acquired a pecuniary interest in maintaining the price of spectacles; and interstate trade and commerce in spectacles and parts thereof has been unreasonably restrained in violation of the Sherman Act. The prayer of the complaint requests that said combination and conspiracy be declared unlawful and that the defendants be perpetually enjoined from making rebates or participating in any plan of rebates.

In 1948 the government presented a petition for an order to show cause alleging as its basis that the government "seeks to insure that a judgment entered by this Court whether after trial or on consent of the parties, be binding on each of the members of the defendant class" and requesting the court order (1) that each of the persons named in the exhibit attached to the affidavit of the government appear and show cause within thirty days after the service of a copy of the order upon him why the doctors named in the complaint are not fairly and adequately representative of the several persons named in said exhibit and why a decree entered in this cause, after trial or consent of the parties whose names are set forth in the complaint should not be binding against the several doctors named in the attached exhibit; (2) that in the event a person listed in said exhibit desires to and does appear and show cause, he be thereupon designated and named individually as a defendant in said cause and be required to answer within thirty days after service on him of the order to show cause; (3) that in the event any person listed in the attached exhibit does not appear and show cause, he be bound by any judgment entered in this cause; (4) that a copy of the order of this court, a copy of the complaint, copy of plaintiff's petition to show cause, a copy of the supporting affidavit but without the exhibit, be sent by registered mail with return receipt and that such mailing be done by the Antitrust Division of the Department of Justice; and (5) that proof of said service be filed with the Clerk of this Court.

On February 26, 1948 said petition was allowed and a show cause order in accordance with the petition was entered. The court presently has under consideration the motion of Dr. P. E. Suehs and the motions of the doctors who were substituted as the moving parties upon the death of Dr. Suehs. The motion is filed on behalf of each movant and on behalf of the doctors which the government has sued as a class, requesting the court to vacate the entry of said order and to dismiss for want of jurisdiction over the person and class. In support of said motion, it is asserted (1) the attempted service by mail pursuant to the show cause order is not sufficient to confer jurisdiction of the person as to members of the class who are not inhabitants of and who are not found in the State of Illinois; (2) the court does not have jurisdiction to render a personal judgment binding upon the doctors sued as a class and who are not individually named as defendants in the complaint in this type of action, and that the show cause order is erroneous and should be vacated insofar as it constitutes an adjudication to the contrary; (3) the show cause order is erroneous and should be

vacated in that it is in conflict with Rule 23, Fed.Rules Civ.Proc. 28 U.S.C.A. since it not only does not afford, but in practical effect denies, adequate representation to the members of the class, and denies them procedural due process; (4) the show cause order is erroneous and should be vacated in that it shifts the burden of proof on the question of fair and adequate representation from plaintiff to the class defendants, it places an impossible burden on the defendants in requiring them to prove want of fair and adequate representation not only as to the past and present but as to the future, it denies the class defendants procedural due process; (5) the show cause order is erroneous in that it requires an answer within thirty days after want of adequate representation is established whereas Rule 12(a) allows twenty days within which to answer after service in the manner provided by law; and (6) the show cause order is erroneous in that it attempts to prevent absent members of the class from challenging the sufficiency of the service of process by motion to dismiss as they have a right to do under Rule 12(b).

It is important to bear in mind that this proceeding was commenced pursuant to Section 4 of the Sherman Act which provides that: "The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of sections 1–7 and 15 of this title; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petition setting forth the case and praying that such violation shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed, as soon as may be, to the hearing and determination of the case; and pending such petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises." Section 5, which was enacted in aid and support of Section 4, reads: "Whenever it shall appear to the court before which any proceeding under section 4 of this title may be pending, that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not; and subpoenas to that end may be served in any district by the marshal thereof."

 The main purpose of this Act is to forbid combinations and conspiracies in undue restraint of trade or tending to monopolize it, and the object of equitable proceedings is to decree, by as effectual means as a court may, the end of such unlawful combinations and conspiracies. It is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all, including the public.

 It is a principle of Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. Rule 65(d) of the Rules of Federal Civil Procedure also provides as follows: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." As was stated in Regal Knitwear Co. v. N. L. R. B., 1944, 324 U.S. 9, 13, 14, 65 S.Ct. 478, 481, 89 L.Ed. 661: "This (rule) is derived from the common law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to

their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding. * * *" Coming within this rule is the judgment in a class or representative suit, to which some members of the class are parties and which judgment may bind members of the class or those represented who were not made parties. Hansberry v. Lee, 1940, 311 U.S. 32, 41, 61 S.Ct. 115, 85 L.Ed. 22, and cases there cited.

A decree which would be binding on the class as represented by the named defendants must stem from a determination by the court of the adequacy of the representation by the named defendants of those not named parties but included in the nomer of "class" and "conspirators". Determination of this question depends on the facts in each case, the nature of the relief sought, and the peculiarities of the association of the class members.

There are twenty-two named defendant doctors who are alleged to be located in nine states and to have a strong pecuniary interest by reason of the substantial rebates or "credits" received by them, that is, "payments totalling in a single year the sum of over $277,000 which they received from defendant American Optical Company alone." Not only are the defendants alleged to be members of a class, but they are alleged to have participated in active concert with the corporate defendants and other members of the class in committing the acts claimed to be violative of the antitrust laws. It is important to observe in this connection the record evidenced by interrogatories directed to the defendant American Optical Company and its answers thereto. Interrogatory 1(a) required the American Optical Company to advise the name and last known address of each oculist to whom, during the year preceding July 23, 1946, American made any kickback, rebate or payment of any part of the purchase price of spectacles and parts thereof sold by American to the patients of such oculist, whether American made such sales as agent of the oculist or otherwise. In response to said interrogatory American submitted to the government a list which it designated as "The name and last known address of each oculist to whom American made payments of credit balances, accruing to such doctor's account as a result of wholesale dispensing transactions during the period July 1, 1945 to August 1, 1946". Attached to the affidavit in support of the request for a rule to show cause is Exhibit A which consists of a list of the names and addresses of approximately 2,000 oculists which was compiled under the government's direction and supervision from the list furnished by American Optical Company in answer to the government's interrogatories being the names and addresses of oculists "to whom American had made payments of credit balances, accruing to said doctor's account as a result of wholesale dispensing transactions". It is apparent to the court from these proceedings that the representative defendants have been active and diligent in the defense of this litigation. Negotiations were in progress for more than two years before counsel for the defendants and the government arrived at the terms of a consent decree.

 From all the facts and circumstances of this case the court is of the opinion that there is a class of defendants so numerous as to make it impractical to join all as parties defendant. The court is further of the opinion that the interests of those not joined are the same as the interest of the named doctor defendants, that they have been adequately and fairly represented, and that they, including the movants, have received such notice and opportunity to be heard as due process requires.

The motions to vacate the show cause order are therefore overruled. An order in accord therewith has this day been entered.