UNITED STATES of America, Plaintiff,

v.

The WILHELM REICH FOUNDATION, a Maine Corporation, Wilhelm Reich and Ilse Ollendorff, Defendants.
Civ. A. No. 1056.

United States District Court, D. Maine, S. D.

Nov. 17, 1954.

Order Affirmed May 11, 1955.

See 221 F.2d 957.

---

Joseph L. Maguire, Acting Asst. Gen. Counsel, F. & D. Div., Dept. of Health, Education & Welfare, Washington, D. C. Peter Mills, U. S. Atty., Portland, Me., for plaintiff.

Charles Haydon, New York City, for Intervenors.

CLIFFORD, District Judge.

This action comes before this Court upon an application for intervention, fil-

ed on May 5, 1954, by Elsworth F. Baker, K. M. Bremer, Philip Gold, Sidney Handelman, Morton Herskowitz, Charles I. Oller, Chester M. Raphael, Michael Silvert, Victor A. Sobey, William F. Thorburn, Oscar Tropp, Simeon J. Tropp, Eileen Walkenstein, James A. Willie and Albert I. Duvall, hereinafter referred to as the applicants. They seek to intervene in the above-entitled action, in which the defendants defaulted and a decree of injunction was entered on March 19, 1954.

A brief history of that case, hereinafter referred to as the original proceeding, is essential to an understanding of this application. On February 10, 1954, a complaint for injunction was filed by the United States of America against the named defendants under section 302 (a) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 332(a), to restrain violations of sections 301(a) and (k), 21 U.S.C.A. § 331(a) and (k), of said Act.

The defendant, the Wilhelm Reich Foundation, was a Maine corporation having its principal place of business at Rangely, Maine. Defendant, Wilhelm Reich, was an individual residing in Rangely and was the moving spirit in the above Foundation and its activities; Ilse Ollendorff, otherwise known as Mrs. Wilhelm Reich, also resided at Rangely and was actively engaged in the conduct of the Foundation, and other affiliated activities of Wilhelm Reich.

The complaint alleged in general that the said defendants were manufacturing and introducing into interstate commerce certain devices referred to by them as orgone energy accumulators, and were representing in their labelling that such devices were therapeutic agents which were beneficial in the cure, mitigation, treatment, and prevention of innumerable diseases and conditions, including such serious and chronic ailments as cancer, anemia, arteriosclerosis, brain tumors, diabetes, gastric ulcers, Buerger's Disease, and leukemia.

It was further alleged that such devices were not effective in the treatment of such diseases and conditions and that, therefore, they were misbranded within the meaning of 21 U.S.C.A. § 352(a); it was also alleged that they were adulterated within the meaning of 21 U.S.C. A. § 351(c) in that their strength differed from, and their quality fell below, that which they were purported and represented to possess. The complaint prayed that the defendants, their officers, agents, servants, employees, attorneys, all corporations, associations, and organizations, and all persons in active concert or participation with any of them be perpetually enjoined from introducing or delivering for introduction into interstaate commerce any such orgone energy accumulator devices and their accessories or any similar article allegedly so misbranded and adulterated. The complaint also prayed that the named defendants be perpetually enjoined from doing or causing any act, oral, written, or otherwise with respect to any kind of orgone energy accumulator device while held for sale after shipment in interstate commerce, which results in said article being misbranded or adulterated within the meaning of the above designated sections of the Act.

Service of a copy of the complaint and summons were duly made upon each of the three defendants on February 10, 1954. No appearance was entered by any of the defendants, nor was an answer filed by them. However, under date of February 25, 1954, defendant Wilhelm Reich sent to the Presiding Judge of this Court a letter purporting to be a concise statement of his position which was more fully set forth in an enclosed lengthy document entitled by him as the "Response". The letter reads as follows:

"Dear Judge Clifford:

"I am taking the liberty of transmitting to you my 'Response' to the complaint filed by the Food and Drug Administration regarding the

Orgone Energy Accumulator. My 'Response' summarizes my standpoint as a natural scientist who deals with matters of basic natural law. It is not in my hands to judge the legal aspects of the matter.

"My factual position in the case as well as in the world of science of today does not permit me to enter the case against the Food and Drug Administration, since such action would, in my mind, imply admission of the authority of this special branch of the Government to pass judgment on primordial, pre-atomic cosmic orgone energy.

"I, therefore, rest the case in full confidence in your hands.

"Sincerely yours,

"/S/ Wilhelm Reich, M.D."

On February 26, 1954, certain requests for admissions were propounded by the United States and served upon each of the named defendants requesting answer thereto within ten days after such service. No appearance, acknowledgement, or answer was made, at any time, by any of the defendants in reply thereto. Twenty-one days later, namely, on March 19, 1954, upon requests by the United States, default of each of the named defendants was duly entered by the Clerk of this Court. On the same date, upon motion for default judgment by the Government, a decree of injunction against the named defendants was entered, as prayed for, enjoining them and their officers, agents, servants, employees, attorneys, all corporations, associations, and organizations, and all persons in active concert, or participation with any of them from the practices set out in the complaint.

On March 22, 1954, certified copies of the decree were served on the three named defendants. At the same time, copies were either served upon or mailed to several other persons at Rangely, Maine, and at nearby Farmington, who were employees or contractors for the defendants in the manufacture and distribution of these devices.

Copies of the decree were also mailed to each of the applicants. These individuals are duly licensed physicians, nearly all of whom specialize in the practice of psychiatry in the New York City, Philadelphia, and New Jersey area. As it appears from their affidavits, they have no legal relationship with any of the named defendants. Apparently, copies of the decree were mailed to them because of their activity in the field of orgonomy. They all believe in the existence and validity of the alleged science, employ its principles and use orgone energy accumulators in their professional practice, and many of them had within recent years studied matters relating to orgonomy under Dr. Reich. It does not appear, however, from their affidavits and answer, nor do they contend, that they were engaged in the manufacture and distribution in interstate commerce of orgone energy accumulators.

The application for intervention was filed on May 5, 1954, approximately two months after the entry of the default decree, and counsel for the Government and the applicants were heard thereon on the same day.

On June 7, 1954, the Government filed a statement and certain documents in opposition to this motion to intervene, and served copies by mail upon counsel for the applicants. Among the documents submitted by the Government was a telegram sent by Ilse Ollendorff, clerk of the Wilhelm Reich Foundation, which read as follows:

"1954 Mar. 30
"Peter Mills
"District Attorney Federal Court House Portland, Me.
"The Wilhelm Reich Foundation is far advanced in preparing full compliance with injunction of March 19, 1954 Stop An exact account of measures taken and still in prog-

ress will be sent to your office for your information.

"The Wilhelm Reich Foundation, Ilse Ollendorf Clerk"

Also, briefs were subsequently submitted for consideration by this Court.

The right to intervene is governed generally by Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C., the pertinent portions of which read as follows:

"(a) Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; * * *

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) When an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. * * *"

Principally, the applicants contend that they are members of a class against whom, along with the named defendants, the original proceeding was filed; that they were not given notice of the action by process; that they were not adequately represented by the named defendants in that proceeding; that they are bound by the decree in that it was designed to and actually does interfere with basic functions of their practice of medicine; and that this is a right which they should have had the opportunity to protect in the original proceeding. They conclude, therefore, that having an absolute right to intervene under Rule 24(a) (2), intervention should be allowed even after a final

judgment has been entered because there is no other way in which said right could be protected.

Independently of Rule 24(a) (2), they contend that their claims and defenses involved questions of law and fact identical with those of the original proceeding and, therefore, permission to intervene should be granted them under Rule 24(b) (2).

■ Although the right to intervene under Rule 24(a) (2) must be predicated upon the two factors referred to therein, the crucial prerequisite seems to be whether or not the applicant may be "bound" by the judgment in the action. 4 Moore's Fed.Practice, 2d Ed., Par. 24.08; see Note, 63 Yale Law Journal, 408. It is generally held that an applicant may be "bound" within the meaning of Rule 24(a) (2) only when he may be subject to *res judicata.* Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19; Innis, Speiden & Co. v. Food Machinery Corp., D.C., 2 F.R.D. 261; Owen v. Paramount Productions, D.C., 41 F. Supp. 557; cf. Cameron v. President and Fellows of Harvard College, 1 Cir., 157 F.2d 993. The rationale is that the protection afforded by intervention of right is not essential to one who will have another legal remedy available after judgment. Note, 63 Yale Law Journal, supra, 411. And, as a general rule, no person or those in privity with him is bound by an *in personam* judgment arising from an action in which he was neither served with process nor given an opportunity to litigate his claims or defenses. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22. The effect of a judgment in a class action, however, is a recognized exception to this latter rule. Hansberry v. Lee, supra; U. S. v. American Optical Co., D.C., 97 F.Supp. 66; Restatement of the Law, Judgments, Sec. 86. But it is only in a so-called true class action that the judgment is conclusive upon

the absent members. System Federal No. 91, Ry. Emp. Dept., American Federation of Labor v. Reed, 6 Cir., 180 F.2d 991; Waybright v. Columbian Mutual Life Ins. Co., 6 Cir., 122 F.2d 245. A judgment in a "hybrid" action is conclusive upon absent members only as to their rights in the res; in a "spurious" class action, only on the parties before the court. See 46 Columbia L. Rev. 818, 824.

It is apparent that the applicants have assumed that the original proceeding was a true class action, the judgment in which would be binding upon them even though they were not designated parties to it. Concerning what was involved in the original proceeding, this is the only basis upon which they could possibly hope to succeed in their attempt to intervene as a matter of right. Indeed, there is authority that Rule 24 (a) (2) is limited in its application to technical representative actions, such as the true and hybrid class suits provided for in Rule 23(a). U. S. v. Columbia Gas & Electric Corp., 3 Cir., 27 F.Supp. 116; 4 Moore's Federal Practice, 2d Ed., Par. 24.08; see also Note, 63 Yale Law Journal, supra, n. 16.

■ The applicants, however, have in the opinion of this Court misconceived the basis and nature of the original proceeding and are clearly unwarranted in their contentions with regard to intervention as a matter of right under Rule 24(a) (2). The original proceeding was an *in personam* action brought solely against three specifically designated persons for the purpose of enjoining them from manufacturing and distributing in interstate commerce orgone energy accumulators which were adulterated and misbranded within the meaning of the Food and Drug Act. The very purpose of the Act is to keep interstate commerce free from deleterious, adulterated and misbranded articles of specified types to the end that the public health and safety might be advanced. United States v. Walsh, 331 U.S. 432, 67 S.Ct. 1283, 91

L.Ed. 1585. And the prohibition of the stated activity of the named defendants was the sole object which the Government sought to accomplish by its action.

■ Since the applicants were not engaged in the manufacture and distribution in interstate commerce of orgone energy accumulators, nor were they in any respect legally associated with the named defendants, the named defendants were properly the only parties before this Court in the original proceeding. Especially is this so when the applicants themselves frankly state in their briefs that the only purpose for their application for intervention is to establish the existence and validity of orgonomy, a matter which was collateral to the main issue in the original proceeding. Accordingly, persons who are not parties to an injunction, nor in privity with them, and whose rights have not been adjudicated therein are not bound by a decree and cannot be held liable for acts done contrary thereto even though the decree assumes to bind them. Swetland v. Curry, 6 Cir., 188 F.2d 841; Kean v. Hurley, 8 Cir., 179 F.2d 888; Chase National Bank v. City of Norwalk, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894; Alemite Mfg. Corp. v. Staff, 2 Cir., 42 F.2d 832; Scott v. Donald, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648.

■ The fact that the applicants may subject themselves to contempt proceedings if they act in concert with the named defendants in violating the terms of the decree does not alter the basic nature of the original proceeding. The provision relating to "officers, agents, servants, employees, etc. * *" was inserted merely to make the decree effective as against the named defendants, adopting to a great extent the language of Rule 65(d) of the Federal Rules of Civil Procedure. Such clauses are a standard provision in injunction decrees and do not impose any liability which would not exist without them. Alemite Mfg. Corp. v. Staff, supra; Re-

gal Knitwear Co. v. N. L. R. B., 324 U. S. 9, 65 S.Ct. 478, 89 L.Ed. 661; Chase National Bank v. City of Norwalk, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894; United States v. American Optical Co., D.C., 97 F.Supp. 66. As stated in Regal Knitwear Co. v. N. L. R. B., supra, 324 U. S. at page 14, 65 S.Ct. at page 481:

"This [Rule 65(d)] is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, *although they were not parties to the original proceeding.*" (Emphasis supplied.)

 Service of copies of the decree upon the applicants, therefore, was in conformance with Rule 65(d), putting them on notice that they, like any other person with notice of the decree, are subject to contempt proceedings should they enable the named defendants to circumvent its terms by performing proscribed activities through them. Nevertheless, since they were not parties to the original proceeding, their activity in the field of orgonomy remains unrestricted even with regard to matters barred by the decree, so long as they act independently of the named defendants. Undoubtedly, however, the applicants will, as a practical matter, be adversely affected by the decree, but that is of no legal consequence, insofar as intervention of right is concerned. Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19; Durkin v. Pet Milk Co., D.C., 14 F.R.D. 374, 378, where the court stated that the "movants may be indirectly affected by a judgment * * * but they will not be 'bound' by the judgment in the sense contemplated by the Rule". See also Brotherhood of Locomotive Engineers

v. Chicago, M., St. P. & P. R. Co., D.C., 34 F.Supp. 594, 596; Kind v. Markham, D.C., 7 F.R.D. 265. Therefore, under all the facts and circumstances of this case, this Court is of the opinion that the applicants do not have an absolute right to intervene under Rule 24(a) (2) because the default decree is not and cannot be *res judicata* as to them.

 Furthermore, under both Rule 24(a) (2) and Rule 24(b) (2) an application for intervention must be timely made. What constitutes timeliness is entrusted to the discretion of the Court. Permissive intervention under Rule 24(b) (2) is very largely a matter of trial convenience and should be made at an early stage of the main proceedings to be of any measurable value. Intervention under Rule 24(a) (2), however, involves something more than trial convenience and might well be allowed at a stage in the proceedings when permissive intervention would be denied. Cameron v. President and Fellows of Harvard College, 1 Cir., 157 F.2d 993. Although the determination of timeliness involves a consideration of a number of factors and the time element alone is not controlling, a strong showing must be made by the applicants in order to be allowed to intervene after the entry of a final judgment. See 4 Moore's Federal Practice, 2d Ed., Par. 24.13.

The only factor stressed by the applicants in this regard is that they have no other way in which their rights could be protected, citing Pellegrino v. Nesbit, 9 Cir., 203 F.2d 463, 37 A.L.R.2d 1296; Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144 F.2d 505; United States Casualty Co. v. Taylor, 4 Cir., 64 F.2d 521; Western Union Telegraph Co. v. International Brotherhood of Electrical Workers, Local Union No. 134, 7 Cir., 133 F.2d 955. The premise upon which the applicants base their contention is erroneous. As this Court has already determined, the applicants are not "bound" by the original proceeding and, therefore, their rights with regard to orgonomy have never

been adjudicated. Consequently, the applicants' contention in this respect is without merit and the cases cited by them are, therefore, inapplicable.

Moreover, considering that the application for intervention was filed some two months after the entry of the default decree and one of the named defendants has indicated to the United States Attorney for the District of Maine that they have substantially complied with its terms, and under all of the other facts and circumstances of this case, this Court, in the exercise of its discretion, is of the opinion that the application for intervention was not timely made under the provisions of either Rule 24(a) (2) or 24(b) (2).

It is therefore ordered, adjudged, and decreed that the application for intervention filed by the applicants on May 5, 1954, be and hereby is

Denied.