[No. 78635-6.   En Banc.]
Argued June 15, 2006.   Decided October 12, 2006.

KAREN WRIGHT, *Individually and on Behalf of All Others Similarly Situated*, ET AL., *Respondents*, v.
MILAN JECKLE ET AL., *Petitioners*.

*Brian T. Rekofke, Timothy M. Lawlor, Robert J. Caldwell,* and *Tracy N. LeRoy* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*) and *Britt L. Tinglum* and *Amy N.L. Hanson* (of *Keller Rohrback, L.L.P.*), for petitioners.

*Robert J. Crotty* and *Matthew J. Zuchetto* (of *Lukins & Annis, P.S.*), for respondents.

*Emily Studebaker* on behalf of American Academy of Ophthalmology and Washington Academy of Eye Physicians & Surgeons, amici curiae.

*John C. Peick* on behalf of American Massage Therapy Association–Washington Chapter and Washington State Chiropractic Association, amici curiae.

*Paul J. Miller, Andrew K. Dolan,* and *Martin L. Ziontz* on behalf of Grant-Adams County Medical Society, Home Care Association of Washington, King County Medical Society, Northwest Academy of Otolaryngology, Pierce County Medical Society, Skagit-Island Counties Medical Society, Snohomish County Medical Society, Thurston-Mason County Medical Society, Washington Acupuncture & Oriental Medical Association, Washington Association of Naturopathic Physicians, Washington Osteopathic Medical Association, Washington Society of Interventional Pain Physicians, Washington Society of Plastic Surgeons, Wash-

ington State Dermatology Association, Washington State Medical Association, Washington State Medical Group Management Association, Washington State Pharmacy Association, Washington State Podiatric Medical Association, Washington State Urological Society, and Yakima County Medical Society, amici curiae.

*Steven R. Stocker* on behalf of Spokane County Medical Society, amicus curiae.

*Alan Wicks* and *Holly Anne Harris* on behalf of Washington State Dental Association, amicus curiae.

*Barbara A. Shickich* and *Michael D. Pierson* on behalf of Washington State Hospital Association, amicus curiae.

¶1 CHAMBERS, J. — We are asked today to decide whether RCW 19.68.010 is an "antikickback" statute or an antiprofit statute. We conclude the legislature intended to prohibit kickbacks, not profits. Accordingly, we reverse the trial court.[1]

## FACTS

¶2 Since the early 1980s, Dr. Milan Jeckle has operated a Spokane Valley medical clinic. He often dispensed, at a profit, a prescription drug combination commonly known as "fen-phen"[2] to patients seeking to lose weight. These patients included plaintiffs Karen Wright, Rosa Lee Johnson, and Karla Seastrom. Fen-phen has since been associated with significant adverse health effects. *Oran v. Stafford*, 226 F.3d 275, 279 (3d Cir. 2000).

[1] More precisely, we are asked to interpret a 156 word sentence. We are up to the task.

[2] Fenfluramine and Dexfenfluramine.

¶3 In 1997, one year before plaintiffs filed this case against Dr. Jeckle, a nationwide class action fen-phen lawsuit was filed in federal court. In 2000, the case settled. The settlement significantly limited the potential liability of all doctors, including Dr. Jeckle, for fen-phen related damages suffered by patients. However, not all claims were preempted.

¶4 Plaintiffs' original 1998 complaint against Dr. Jeckle alleged injuries related to the diet drugs he dispensed. At least in part because of the class action settlement, plaintiffs have refined their claims. They currently assert that Dr. Jeckle violated the Consumer Protection Act (CPA), RCW 19.86.020, by engaging in deceptive acts in trade or commerce and that he breached his fiduciary duty to them. The deceptive act in question is Dr. Jeckle's alleged violation of RCW 19.68.010.

¶5 In 1999, the Spokane County Superior Court granted Dr. Jeckle's CR 12(b)(6) motion to dismiss, finding that doctors were not properly subject to the CPA for complaints relating to the practice of medicine. Plaintiffs appealed. In 2001, the Court of Appeals reversed the trial court and held that since Dr. Jeckle's advertising, marketing, and sale of diet drugs "implicate[d] the entrepreneurial aspects of medicine," plaintiffs could pursue their claim under the CPA. *Wright v. Jeckle*, 104 Wn. App. 478, 480, 16 P.3d 1268 (2001).

¶6 On remand in 2002, Spokane Superior Court Judge Richard J. Schroeder found that (1) RCW 19.68.010, the statute at issue before us, applies to physicians; (2) physicians were not prohibited from selling prescription drugs to patients; and (3) Dr. Jeckle violated RCW 19.68.010 by selling fen-phen to his patients for a profit.

¶7 In November 2004, plaintiffs sought to expand the trial court's 2002 order, asking the court to rule that Dr. Jeckle also breached his fiduciary duty to his patients, as a matter of law, by violating RCW 19.68.010. By that time, Judge Schroeder had retired and the case was reassigned to Judge Kathleen M. O'Connor. Apparently hewing to the

prior trial judge's order, Judge O'Connor granted plaintiffs' motion, ruling that "Milan Jeckle's violation of RCW 19.68.010 is a per se breach of his fiduciary duties." Clerk's Papers (CP) at 538-39.

¶8 Prior to Judge O'Connor's November 2004 order, Dr. Jeckle had filed a motion for a CR 54(b) review of the 2002 ruling. Judge O'Connor found good cause to review the 2002 order and found that (1) RCW 19.68.010 does not allow physicians to profit from selling prescription medications to their patients; (2) there is a question of fact as to whether Dr. Jeckle profited from his office sales of fen-phen; and (3) if the jury found that Dr. Jeckle made a profit under RCW 19.68.010, then Dr. Jeckle would have violated his fiduciary duty as a matter of law. Soon after, Judge O'Connor granted plaintiffs' motion to certify this case for appellate review.[3]

¶9 The Court of Appeals accepted review, which was transferred to this court.

## ANALYSIS

¶10 We review the meaning of a statute de novo. *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001). Our goal is to ascertain and implement the legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). When the statute's language is plain on its face, we go no further. We determine the plain meaning of a statute not only from the individual section at issue, but also from related statutes disclosing legislative intent about the provision in question. *Campbell & Gwinn*, 146 Wn.2d at 11. We avoid readings of statutes that lead to

---

[3] Specifically, the trial court found:

[T]he definition of "profit" under RCW 19.68.010 and the interpretation and the application of the statute involve a controlling question of law as to which there is substantial ground for a disagreement of opinion and that immediate review of the Order will materially advance the ultimate termination of the litigation.

The definition of "profit" under RCW 19.68.010 involves a matter of great public importance because it governs when a physician violates RCW 19.68.010 by selling drugs to his patients.

CP at 610.

strained or absurd results. *Glaubach v. Regence BlueShield*, 149 Wn.2d 827, 833, 74 P.3d 115 (2003).

██ ¶11 The threshold and deciding issue in this case is the meaning of RCW 19.68.010. Chapter 19.68 RCW was enacted in 1949, a time when the Federal Trade Commission and many other states were showing great interest in passing antikickback legislation. 1988 Op. Att'y Gen. No. 28; *see generally Lilly v. Comm'r of Internal Revenue*, 188 F.2d 269, 271 (4th Cir. 1951) (describing history). This push for antikickback legislation was in response to a number of high profile scandals, including an American Optical Company kickback scheme. *See United States v. Am. Optical Co.*, 97 F. Supp. 66 (N.D. Ill. 1951). In *American Optical*, the justice department brought a class action lawsuit in 1948 against approximately 2,000 physicians for conspiring to influence patients to have their prescriptions filled at American Optical. American Optical would then inflate the charges and give a kickback to the referring doctor. It was against this background that RCW 19.68.010 and its companion statutes were adopted.

¶12 The first portion of RCW 19.68.010(1) reads in relevant part:

It shall be unlawful for *any person* . . . to pay, or offer to pay or allow, directly or indirectly, *to any person* licensed by the state of Washington . . . in the practice of medicine and surgery, drugless treatment in any form, dentistry, or pharmacy and it shall be unlawful *for such person* to request, receive or allow . . . a rebate, refund, commission, unearned discount or *profit by means of a credit or other valuable consideration in connection* with the referral of patients . . . *or in connection with the furnishings* of medical, surgical or dental care, diagnosis, treatment or service, on the sale, rental, furnishing or supplying of clinical laboratory supplies or services of any kind, drugs, medication, or medical supplies, or any other goods, services or supplies prescribed for medical diagnosis, care or treatment.

(Emphasis added.) Essentially, plaintiffs suggest that this statute should be further parsed to read:

It shall be unlawful for *any person* . . . to . . . receive [a] *profit* . . . *in connection with the furnishings* of medical . . . care . . . on the sale . . . of any . . . drugs.

We disagree. While not a model of clarity by any means, when we read all of the words in RCW 19.68.010, it prohibits two things. The first clause prohibits paying anything of value in return for a referral. The second clause prohibits receiving anything of value in return for referring patients. RCW 19.68.010. But the statute does not prevent a patient from paying a health care provider for services rendered or prescriptions received. Nor does it prevent a health care provider from making a profit on furnishing goods or care to patients. We arrive at this conclusion based upon the purpose, structure, and words of this and related statutes. *Id.* Our conclusion is reinforced by common sense.

¶13 We recognize that the word "profit" in the statute can give the reasonable reader pause. But a single word in a statute should not be read in isolation.[4] Context matters. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) ("a word is known by the company it keeps (the doctrine of *noscitur a sociis*)"); *State v. Roggenkamp,* 153 Wn.2d 614, 623, 106 P.3d 196 (2005). Read in context, RCW 19.68.010 prohibits taking an "unearned . . . profit" from a third party, such as "when a licensed health care professional is paid an *unearned profit* by another person who was permitted to furnish/sell something to a patient that had been prescribed by the professional." Amicus Br. Wash. State Med. Ass'n at 12 (emphasis added).[5] Thus, the statute would prohibit a doctor from receiving an "unearned profit" (or "kickback") from a pharmacist to whom a doctor referred a patient.

---

[4] We find it unnecessary and premature to determine the precise meaning of the term "profit" under RCW 19.68.010. We decline the trial court's invitation to do so.

[5] Amici briefs on behalf of Dr. Jeckle have been filed by the Washington State Medical Association, the Spokane County Medical Society, the Washington State Hospital Association, the Washington State Dental Association, the Washington Academy of Eye Physicians and Surgeons (along with the American Academy of Ophthalmology), and the Washington State Chiropractic Association (along with the American Massage Therapy Association).

382

¶14 In contrast, under the plaintiffs' interpretation, no third party is necessary to trigger application of the statute. In fact, "the person who would be paying the professional could be the professional her/himself." *Id.* This is a peculiar thing for the legislature to seek to prohibit, and we were unable to disprove amicus' assertion that the statute has never previously been read that way. *Id.* at 3. We agree with amicus that "[a medical professional] cannot alone do such a transaction." Amicus Br. Wash. State Dental Ass'n at 4.

¶15 It would also lead to absurd consequences. Under plaintiffs' theory that RCW 19.68.010 prohibits Dr. Jeckle from profiting from the sale of prescription diet drugs, his patients, these plaintiffs, could potentially be criminally liable for buying drugs from Dr. Jeckle if he profited from the transaction.[6] *But cf. Glaubach*, 149 Wn.2d at 833 (declining to read statutes in an absurd manner). If the legislature contemplated such a result, we believe it would have spoken up by now.

¶16 Related statutes bolster our interpretation. RCW 19.68.020, like .010, prohibits profits earned from referring patients, *not profits from treating patients or providing goods or services*. Similarly, RCW 19.68.030 prohibits fee splitting in connection with the furnishing of medical care. RCW 19.68.010, .020, and .030 all include some form of the word "profit." RCW 19.68.040 specifically authorizes payment for services rendered ("persons . . . shall only be authorized by law to charge or receive compensation for professional services rendered if such services are actually rendered by the licensee"). Clearly, the chapter is aimed at preventing kickbacks, not at preventing medical professionals from profiting off the goods and services that they themselves provide.

¶17 We find further support for our conclusion in RCW 74.09.240, which makes it a felony to receive kickbacks in

---

[6] That is, under plaintiffs' construction, one can also envision the statute providing that, "It shall be unlawful for [a patient] to pay [Dr. Jeckle] unearned . . . profit . . . in connection with . . . the sale . . . of . . . drugs . . . prescribed for . . . medical . . . treatment." *Cf.* RCW 19.68.010.

connection with items and services subject to Medicaid or public assistance reimbursement. The statute expressly supersedes the criminal provisions of chapter 19.68 RCW when the service or good involved is reimbursable by public assistance. *See* RCW 74.09.240. It seems the legislature intended for these two antikickback provisions to work in harmony with each other: if the provider was not reimbursed for any items or services, the criminal provisions of chapter 19.68 RCW apply; if there is state reimbursement, RCW 74.09.240 applies.

¶18 *Day v. Inland Empire Optical, Inc.*, 76 Wn.2d 407, 456 P.2d 1011 (1969), is also consistent. In *Day*, this court held that ophthalmologists who had an ownership interest in an optical shop, but no direct supervisory role, could not receive "valuable consideration" for referring patients there. *Day*, 76 Wn.2d at 418-19. We also noted that if the ophthalmologists *had* a direct supervisory role over the opticians, their ownership interest in the optical shop *would not* violate RCW 19.68.010. *Day*, 76 Wn.2d at 420; *see* RCW 18.34.010(1) (in relevant part, allows a licensed optometrist to work under the "personal supervision" of a licensed physician).

¶19 RCW 19.68.010 *does not* prohibit furnishing drugs at a profit. RCW 19.68.010 *does* prohibit kickbacks. Any other reading not only ignores crucial terms within the statute itself but also ignores the statute's clear intent.[7]

CONCLUSION

¶20 We conclude that RCW 19.68.010 does not prohibit Dr. Jeckle from furnishing prescription diet drugs to his patients at a profit. Accordingly, we vacate the trial court orders dated July 26, 2002 (Schroeder, J.), November 1,

---

[7] According to the record before the court and the trial court's November 1, 2004, order, plaintiffs' fiduciary duty claim rests on Dr. Jeckle's violation of RCW 19.68.010. Since we find Dr. Jeckle did not violate RCW 19.68.010, we need not determine whether a physician's violation of RCW 19.68.010 is a per se breach of his fiduciary duty to his patients. Lastly, we deny both parties' motions to strike portions of each other's briefs as moot, as they do not bear on our analysis or outcome of the case. RAP 10.7.

2004 (O'Connor, J.), December 10, 2004 (O'Connor, J.), January 11, 2005 (O'Connor, J.), and any other rulings inconsistent with this opinion and remand to the trial court for further proceedings consistent with this opinion.

ALEXANDER, C.J., and C. JOHNSON, MADSEN, SANDERS, BRIDGE, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.