[No. 28835. *En Banc.* March 29, 1943.]

THE STATE OF WASHINGTON, *on the Relation of Standard Optical Company, Plaintiff*, v. THE SUPERIOR COURT FOR CHELAN COUNTY, *Kemp, Judge, Respondent.*[1]

[1]Reported in 135 P. (2d) 839.

324

*Crollard & O'Connor,* for relator.

*Richard G. Jeffers* and *Harvey F. Davis,* for respondent.

*Saul D. Herman* and *Lionel E. Wolff, amici curiae.*

BEALS, J.—This is a proceeding in the nature of *quo warranto,* instituted by the state of Washington, on the relation of Richard G. Jeffers, prosecuting attorney for Chelan county, against Standard Optical Company, a domestic corporation, defendant, the plaintiff asking an order of ouster against the defendant corporation, upon the ground that it had exceeded its corporate powers and violated the law. In the information which was filed, defendant was charged with unlawfully practicing optometry in the state of Washington, in violation of Rem. Rev. Stat., § 10147 [P. C. § 4290]. By its answer, defendant denied that it was practicing op-

tometry, or that it had in any way exceeded its charter rights.

The trial of the action resulted in findings of fact stating that the defendant had done certain acts in connection with its optical business, from which the court concluded that it had, by practicing optometry, exercised powers not conferred upon it by law, and should be enjoined from performing those acts in the future. The court then entered judgment, finding defendant guilty of practicing optometry within the state of Washington, "and doing acts which amount to a forfeiture of its rights and privileges as a corporation within the state of Washington." The judgment then enjoined the defendant from displaying certain signs, and from circulating advertisements specifically described in the judgment, and enjoined the defendant from employing a registered optometrist to examine and test eyes or adapt lenses to the human eye, and from committing certain other acts which the court declared unlawful. The court then expressly retained jurisdiction of the cause for the purpose of ordering a complete ouster of the defendant and the forfeiture of its charter in case the defendant should, in the future, violate any portion of the judgment.

The defendant, being of the opinion that there was available to it no plain, speedy, and adequate remedy at law by way of appeal, applied to this court for a writ of certiorari for the purpose of bringing the judgment before this court for review. A writ of certiorari having been issued, a full return was made, and the matter submitted to this court for final determination.

In this opinion, we shall refer to the optical company as appellant, and to the state as respondent.

The information which initiated this proceeding alleged that appellant had practiced optometry, because of its employment of licensed optometrists to examine

and test the eyes of customers at its place of business in the city of Wenatchee, also by advertising that optometric services were available at the store which it maintained. This store is in sole charge of a licensed optometrist, who examines and tests the eyes of customers, determines whether glasses are needed, and in proper cases on request prescribes and sells glasses. Appellant exercises no control over the professional judgment of the optometrist, and he exercises his professional discretion in advising that glasses are or are not needed. The company makes one charge, which covers both the examination and the glasses. The company selects the optometrist, who is compensated for all services which he renders by an agreed salary plus a commission based upon the gross receipts. The optometrist in charge of the Wenatchee store at the time of the institution of this proceeding owned two of the two hundred fifty shares of the corporation's capital stock.

Appellant advertised its business through newspapers and by signs on the store. Over the entrance and on the store window were the words "Standard Optical Company," also the legends "Glasses on Easy Payments," and "Eyes Examined, Lenses Duplicated." After the filing of the information, the name and professional designation of the optometrist in charge was added to the sign on the window. The newspaper advertisements carried the name of the corporation in large type, and most of them contained the words, "See the registered optometrist here for a complete eye examination now! You will be frankly told if glasses are not needed." These advertisements also carried the name of the registered optometrist in charge of the store. The advertising matter was prepared by an agent of the company in Salt Lake City, Utah, where the company maintains a similar store.

The question presented in this litigation is whether a corporation has the right to engage in the practice of optometry, and, if not, whether the course of business followed by appellant in maintaining a store under its own name, in charge of a licensed optometrist in its employ, coupled with the advertising of the services of this optometrist, constitute the practice of optometry by appellant.

Laws of 1919, chapter 144, p. 396 (Rem. Rev. Stat., § 10147 *et seq.*), known as "the optometry law," defines the practice of optometry, provides for the regulation thereof, creates a board of examiners, and provides penalties for violations of the act.

Rem. Rev. Stat., §§ 10147, 10148 [P. C. §§ 4290, 4291], read as follows:

"§ 10147. Any person shall be deemed to be practicing optometry within the meaning of this act, who shall in any manner, except as provided in section 10159, 1st, display any sign, circular, advertisement or device purporting or offering to in any manner examine eyes, test eyes, fit glasses, adjust frames or setting himself or herself forth as an optometrist, optician, specialist, optical specialist, eyesight specialist or refractionist, with intent to induce people to patronize himself, herself, or any other person; 2d, who shall make in any manner a test or examination of the eye or eyes of another, to ascertain the refractive, muscular or pathological condition thereof; 3d, who shall in any manner adapt lenses to the human eye for any purpose either directly or indirectly.

"§ 10148. It shall be unlawful for any person to practice optometry in the state of Washington without first obtaining a certificate of registration or other permit from the board of examiners, and filing the same for record with the clerk of each and every county in which he may desire to practice."

By § 10152 [P. C. § 4296], paragraph (5), it is made unlawful

"To practice optometry under a false or assumed name, or as a representative or agent of any person, firm or corporation with which the accused has no connection."

Section 10150 [P. C. § 4294] states the qualifications of persons eligible to be examined for registration as optometrists.

■ It is apparent from the sections of the statute above referred to, that a corporation cannot, under the statute, be licensed to practice optometry. The legislative intent to place optometry in the same general category as the professions of law, medicine, and dentistry clearly appears. Beyond question, the practice of optometry affects the public health and welfare.

The supreme court of Massachusetts, in the case of *McMurdo v. Getter*, 298 Mass. 363, 10 N. E. (2d) 139, following many cases cited in the opinion, held that optometry is a profession, rather than a trade. With this holding we are in entire accord.

■ The rule that neither a corporation nor any unlicensed person or entity may engage, through licensed employees, in the practice of the learned professions, is stated in 13 Am. Jur., title "Corporations," p. 838, § 837, as follows:

"While a corporation is in some sense a person and for many purposes is so considered, yet, as regards the learned professions which can only be practiced by persons who have received a license to do so after an examination as to their knowledge of the subject, it is recognized that a corporation cannot be licensed to practice such a profession. For example, there is no judicial dissent from the proposition that a corporation cannot lawfully engage in the practice of law.

"A corporation cannot be licensed to carry on the practice of medicine. Nor, as a general rule, can it engage in the practice of medicine, surgery, or dentistry through licensed employees. It is generally held that in the absence of express statutory authority, a cor-

poration may not engage in the practice of optometry either directly or indirectly through the employment of duly registered optometrists."

In 41 Am. Jur., title "Physicians and Surgeons," p. 149, § 20, is found the following:

"And it is the majority rule that a corporation cannot engage in the practice of medicine, and that neither a corporation nor any other unlicensed person or entity may engage, through licensed employees, in the practice of medicine or surgery, dentistry, or any of the limited healing arts, although, as appears later, some of the courts qualify or disregard the rule in favor of the practice of optometry. A statute permitting corporations for profit to be organized for any lawful purpose does not authorize the organization of corporations to engage in the practice of medicine where a statute regulating such practice contemplates only the licensing of individuals."

This court, in the case of *Deaton v. Lawson*, 40 Wash. 486, 82 Pac. 879, 2 L. R. A. (N.S.) 392, followed the general rule that an unlicensed person may not engage in the practice of medicine by employing a licensed agent. It appeared that an unlicensed individual owned, operated, and managed the "State Medical Institute," employing a licensed physician on a salary basis. This court held that a contract between the institute and a person desiring medical treatment was void as against public policy. In the course of the opinion, the court said:

"Stripped of all subterfuges and pretenses, this is neither more nor less than a contract on the part of appellant Lawson to render professional services for the respondent, a contract he could not perform without violating the laws of the state."

In the case of *State ex rel. Lundin v. Merchants Protective Corp.*, 105 Wash. 12, 177 Pac. 694, this court recognized the rule that a corporation may not en-

gage in the practice of law through licensed agents. The case last referred to was cited with approval in the case of *Hansen v. Sullivan,* 184 Wash. 538, 52 P. (2d) 895.

Appellant argues that the mere employment of licensed agents, in so far as the question here presented is concerned, does not constitute the practice of optometry. As stated in the text quoted from 41 Am. Jur., *supra,* some courts have refused to apply the general rule to the practice of optometry. In determining the question, of course, each court has considered the governing statute of the particular jurisdiction, and interpreted the same in accordance with the legislative intent, with particular attention to the question of whether or not the legislature considered optometry a profession, or, on the other hand, a business or trade.

It is difficult to overestimate the importance of good sight. The use of lenses to improve vision is very great, and the prescribing of properly prepared glasses and the advice, in proper cases, that glasses are unnecessary, are equally important. Incalculable harm may result from improper diagnosis or advice in connection with these matters, or from the use of glasses not correctly ground. Before one may be permitted to take the examination for an optometrist's license, the applicant must show that he has followed designated courses of study which indicate that he possesses certain educational qualifications.

We are convinced that the legislature correctly classed optometry as a profession, and that, under the statutes of this state, it should be so considered.

In the case of *State ex rel. Beck v. Goldman Jewelry Co.,* 142 Kan. 881, 51 P. (2d) 995, 102 A. L. R. 334, the supreme court of Kansas held that a retail jewelry establishment, which leased space in its store to a licensed optometrist, the contract between the two pro-

viding that the store would reimburse the optometrist for each examination plus a commission on gross sales, the store fixing the prices for sales of glasses, was practicing optometry in violation of the statute. The court held that under the statute the corporation had no power to practice optometry, and that, in the case before the court, the contract between the parties was merely a device to avoid the statute. In the course of the opinion, the court said:

"It is our judgment that under our statutes, the legislature, having in mind the protection of eyesight is just as important as the protection of property rights and advice thereon, as the protection of the teeth, as the protection against improper and unauthorized methods of healing, by the enactment of the statutes with reference to optometry recognized it as a profession and accordingly regulated it, and an examination of those statutory regulations conclusively shows that the practice of the profession is limited to individuals, and that corporations cannot be chartered to engage therein. Not only is this holding a necessary consequence of our statutes but it is in accord with the weight of authority.

. . .

"Stronger language might be used to characterize them, but as we view them the contract of employment and the lease in connection with it are devices to avoid the provisions of our statutes with reference to practicing optometry, and cannot avail the defendant."

The supreme court of South Carolina, in the case of *Ezell v. Ritholz,* 188 S. C. 39, 198 S. E. 419, held that unlicensed persons employing licensed physicians to make eye examinations were unlawfully practicing optometry. Discussing this matter, the court said:

"If such a course were sanctioned the logical result would be that corporations and business partnerships might practice law, medicine, dentistry or any other profession by the simple expedient of employing licensed agents. And if this were permitted professional standards would be practically destroyed, and profes-

sions requiring special training would be 'commercialized, to the public detriment. The ethics of any profession is based upon personal or individual responsibility. One who practices a profession is responsible directly to his patient or his client. Hence he cannot properly act in the practice of his vocation as an agent of a corporation or business partnership whose interests in the very nature of the case are commercial in character."

The following authorities are to the same effect: *State v. Kindy Optical Co.*, 216 Iowa 1157, 248 N. W. 332; *Funk Jewelry Co. v. State*, 46 Ariz. 348, 50 P. (2d) 945; *State ex rel. Harris v. Myers*, 128 Ohio St. 366, 191 N. E. 99; *State ex rel. Bricker v. Buhl Optical Co.*, 131 Ohio St. 217, 2 N. E. (2d) 601; *Rowe v. Standard Drug Co.*, 132 Ohio St. 629, 9 N. E. (2d) 609; *Eisensmith v. Buhl Optical Co.*, 115 W. Va. 776, 178 S. E. 695; *Stern v. Flynn*, 154 Misc. 609, 278 N. Y. Supp. 598; *McMurdo v. Getter*, 298 Mass. 363, 10 N. E. (2d) 139; *Neill v. Gimbel Bros.*, 330 Pa. 213, 199 Atl. 178.

■ Appellant argues that a corporation employing registered optometrists in the practice of optometry is not itself engaged in practice, citing several authorities in support of this proposition. The cases which appellant relies on were decided on the theory that optometry is a mechanical trade or skill, rather than a profession.

Appellant also relies upon the case of *Jaeckle v. L. Bamberger & Co.*, 119 N. J. Eq. 126, 181 Atl. 181, in which the court construed a statute referring to one practicing optometry as any person who

". . . advertises himself as an optometrist, or who shall employ any means for the measurement of the powers of vision . . . either on his own behalf or as an employee or student of another, . . ."

the statute further making it an offense for any "person, company or association" to employ an unlicensed per-

son. Such a statute clearly contemplates the employment of licensed optometrists, and in that respect differs from the statute of this state.

In the case of *Golding v. Schubach Optical Co.*, 93 Utah 32, 70 P. (2d) 871, the supreme court of Utah held that the employment of licensed optometrists by a corporation was permissible. It appears that the statute of Utah made it unlawful to employ any unlicensed person to practice, thus by implication authorizing the employment of licensed persons.

Finally, appellant relies upon the opinion of the supreme court of Missouri in the case of *State ex inf. McKittrick v. Gate City Optical Co.*, 339 Mo. 427, 97 S. W. (2d) 89, which supports appellant's position. The court held that the contentions of the optical company were not opposed to the public policy of Missouri. As we hold that the public policy of this state is to the contrary, the case should not be followed.

■ By its newspaper advertisements, appellant invited the public to consult the registered optometrist in charge of its establishment, and also stated that it furnished optometric services, as illustrated by one of its advertisements, which contains the following:

"The Washington state law prohibits us advertising eye glasses on terms of $1.00 a week as we do in our Utah and Idaho stores. However, it is our sincere promise to give you the same high-quality glasses and optometric service as you would receive in our Utah and Idaho stores at lowest prices—and on easy terms that will please and surprise you."

The record shows that appellant advertised that it was practicing optometry.

■ Appellant next attacks the judgment in so far as appellant is restrained from advertising that it adjusts frames or advertises its business as an optician, which term we assume is generally applied to one who

grinds lenses according to a prescription prepared by an oculist or a licensed optometrist.

By Rem. Rev. Stat. (Sup.), § 10159 [P. C. § 4302b], it is provided that the act shall not be construed to pertain to the practice of a qualified oculist or physician

". . . . nor to any person who in the regular course of·trade, sells or offers for sale, spectacles or eye-glasses as regular merchandise without pretense of adapting them to the eyes of a purchaser, and not in evasion of this act."

The language of the injunction follows § 10147, *supra,* and, if at some future date appellant should be charged with violating the terms of the injunction, the decree would be construed in the light of the entire act, and appellant would not be held guilty of violation of the decree by reason of the fact that it performed acts expressly excepted from the scope of the statute by § 10159, above referred to.

 Appellant argues that paragraph 5 of § 10152, *supra,* carries the implication that a person who owns stock in a corporation may practice optometry, and that therefore a corporation whose articles appropriately cover the matter, may practice optometry. The section referred to is a limitation on the activities of a licensee, and neither authorizes a corporation to practice optometry nor justifies the acts of appellant, as disclosed by the record in the case at bar.

Appellant also, argues that as it exercised no control over the acts of its employee, the registered optometrist, it follows that this optometrist was not, in the practice of his profession, appellant's agent. While it may be assumed that the optometrist in his practice exercised his professional judgment conscientiously in each individual case, this has no bearing upon the questions here presented.

Finally, appellant argues that, pursuant to the opinion of this court in the case of *State v. Brown,* 37

Wash. 97, 79 Pac. 635, 107 Am. St. 798, 68 L. R. A. 889, it should now be held that a corporation may practice optometry through licensed optometrists. In the case cited, the defendant was charged with the offense "of owning, running and managing a dental office or department in the state of Washington, without a license," in violation of chapter 152, p. 314, Laws of 1901. This court held that, in so far as the defendant was concerned, the statute referred to was an unconstitutional interference with the ownership of property.

In the recent case of *Campbell v. State*, 12 Wn. (2d) 459, 122 P. (2d) 458, in which the constitutionality of § 1, chapter 45, p. 125, Laws of 1937 (Rem. Rev. Stat. (Sup.), § 10031-18 [P. C. § 1931-48]), was involved, we held that the statute which made it unlawful for any person to conduct a dental office in his name unless such person was personally present in his office during the majority of the time the office was operating, was a valid exercise of the police power, distinguishing the case of *State v. Brown, supra.* The decision in the *Campbell* case limited the scope of the *Brown* case, and that decision is not controlling here.

The judgment under review is correct, and is accordingly affirmed.

SIMPSON, C. J., STEINERT, BLAKE, and ROBINSON, JJ., concur.

MILLARD, J. (concurring)—No one may practice optometry in this state without first obtaining a certificate of registration or other permit from the board of examiners. The practice of optometry or any other profession by a corporation may not be legally sanctioned. An individual who is not licensed and/or a corporation which can not be licensed to practice optometry may not engage in the practice of that pro-

fession by the expedient of employing a licensed optometrist. I therefore concur in the majority opinion.

MALLERY J. (dissenting)—The Standard Optical Company is a corporation. It did two things: (1) It hired a licensed and registered optometrist to examine and test eyes and prescribe lenses therefor; (2) it advertised, as set out in the majority opinion. It has been restrained from doing both of these things in the future. I dissent as to prohibiting the first, and concur with the majority on the second. The logic back of the majority opinion on the first thing may be thus stated: (1) No one may practice optometry without a certificate of registration; (2) a corporation cannot qualify for a certificate of registration; (3) therefore, a corporation cannot hire a registered optometrist. I agree with the first two propositions, and shall therefore discuss only the third, which I think is a *non sequitur*.

No law of our state prohibits the employment of an optometrist by a corporation. Rem. Rev. Stat. (Sup.) § 10152, subd. (5), makes it unlawful

"To practice optometry under a false or assumed name, or as a representative or agent of any person, firm or corporation with which the accused has no connection."

The clear inference from this section is that it is lawful to practice optometry as the agent of a corporation with which one *has* a connection. The Standard Optical Company owns, runs, and manages an optical office and has therein a substantial property right. There is a clear and valid distinction between a corporation practicing optometry and hiring a qualified optometrist. This distinction appears in the following quotation from *State v. Brown*, 37 Wash. 97, 79 Pac. 635, 107 Am. St. 798, 68 L. R. A. 889, which has never

been overruled and which has been a rule governing property rights for over ten years. The court said:

"To own and manage property is a natural right, and one which may be restricted only for reasons of public policy, clearly discernible. To hold this portion of the statute valid would be to make possible conditions which were never designed to exist. To illustrate, suppose a man thoroughly qualified and legally licensed as a dentist should die, leaving a perfectly and completely equipped dental office to his widow, who knew nothing of dentistry and was incapable of securing a license. The widow, not being able to sell the dental office to advantage, decides to hire competent and legally licensed dentists to treat patrons of the office, and undertakes the management herself, paying bills, collecting accounts, arranging credits, making appointments, and doing other acts necessary to the supervision and control of the business affairs of the concern. Then she becomes a criminal, if this portion of the statute have virtue, because she has 'managed a dental office.' And yet, it will scarcely be contended that any of these acts injuriously affect 'the health, good order, morals, peace, or safety' of society, or menace 'the lives, limbs, health, comfort, quiet or property' of the patients treated in such office. . . .

"Congress has enacted statutes requiring masters, mates, and engineers of various vessels to pass examinations and procure licenses before engaging in the work of their respective avocations. But we are unaware of any such prerequisite for one seeking to own a ship or manage its business. Druggists who compound medicines must have a license, but this is not essential to ownership of a drug store. The owner complies with the statute when he hires a duly licensed pharmacist to attend to the matters requiring a knowledge of drugs, medicines, and poisons. Had the 'ownership' of ships or drug stores been deemed a menace to the health, safety, or welfare of those patronizing either, examinations and licenses would doubtless have been provided for. But the necessity for such requirements evidently never occurred either to Congress or the legislature. Yet the reasonableness and legality of such prerequi-

sites could be more readily upheld than those involved in the case at bar."

Earlier in the opinion, the court said:

"The police power does not justify the withholding from one individual of a natural privilege or right, in order that a corresponding advantage may be added to the rights or privileges of another. . . .

"But we are unable to say or perceive that the health, moral or physical welfare of the public, or any of the personal or property rights of its individuals, are endangered by the ownership and management of a dental office, so long as those employed therein to do the actual dentistry work are qualified and licensed as by law required.

"In the case of *In re Aubrey*, 36 Wash. 308, 78 Pac. 900, this court held unconstitutional an act of the legislature requiring horseshoers to pass an examination. In the opinion the following language occurs:

" ' "Liberty," in its broad sense, as understood in this country, means the right not only of freedom from actual servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work when he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation.' And the court quotes from the case of *Allgeyer v. Louisiana*, 165 U. S. 589, 17 Sup. Ct. 427, 41 L. Ed. 832, where the supreme court of the United States employed similar language in a like holding."

In cases where one is prohibited from doing a certain thing and that prohibition inures to the benefit of others in the same line of endeavor by eliminating competition, this special privilege should be clearly distinguished from the contentions made that it promotes the general welfare. The question of promoting the general welfare must be resolved by balancing the destruction of natural rights against the public benefits claimed to be derived from it. I quote the justification given by the majority opinion for overriding the relator's rights:

"It is difficult to overestimate the importance of good sight. The use of lenses to improve vision is very great, and the prescribing of properly prepared glasses and the advice, in proper cases, that glasses are unnecessary, are equally important. Incalculable harm may result from improper diagnosis or advice in connection with these matters, or from the use of glasses not correctly ground. Before one may be permitted to take the examination for an optometrist's license, the applicant must show that he has followed designated courses of study which indicate that he possesses certain educational qualifications."

I agree with the principle therein stated. However, it does not apply where the person employed is qualified according to law.

Destruction of a natural right will weigh heavily in the scales. No light or fanciful benefit to the public can outweigh it. To persons who do not care to engage in optometry, the right to do so in a lawful way and upon terms of equality may appear to be academic, but such is the force of precedent that, if they do not preserve that right for those who are desirous of doing so, they may shortly find their rights infringed in their own line of endeavor. A liberty that is not secured for all is safe for none. The optometrists of the state may be benefited by the elimination of the Standard Optical Company and its ilk, but that is a far cry from serving the interests of the people.

This conflict of interests is well illustrated in the recent case of *American Medical Ass'n v. United States,* 63 S. Ct. 326, 317 U. S. 519, which affirmed a conviction for conspiracy in restraint of trade. The court said:

"For the moment it is enough to say that the indictment charged a conspiracy to hinder and obstruct the operations of Group Health Association, Inc., a non-profit corporation organized by Government employees to provide medical care and hospitalization on a risk-sharing pre-payment basis. Group Health employed

physicians on a full time salary basis and sought hospital facilities for the treatment of members and their families. *This plan was contrary to the code of ethics of the petitioners."* (Italics mine.)

This case also establishes that a corporation can hire a physician.

I concur in the majority opinion in so far as it applies to the advertising. This is governed by Rem. Rev. Stat. (Sup.), § 10152, subd. 11 and 15. A law to protect the public against misleading and "bait" advertising is a valid exercise of the police power, being reasonably calculated to serve the welfare of the people. This is particularly true since no one has a right to deceive and hence no constitutional rights are involved.

