[No. 81734-1. En Banc.]
Argued November 17, 2009. Decided March 18, 2010.

COLUMBIA PHYSICAL THERAPY, INC., PS, *Petitioner*, v. BENTON FRANKLIN ORTHOPEDIC ASSOCIATES, PLLC, ET AL., *Respondents*.

*Darrin E. Bailey* and *Danford D. Grant* (of *Stafford Frey Cooper PC*) and *Charles K. Wiggins* (of *Wiggins & Masters PLLC*), for petitioner.

*Michael H. Church* and *Matthew T. Ries* (of *Stamper Rubens PS*) (*Howard R. Rubin* of *Katten Muchin Rosenman*, of counsel) and (*Kenneth J. Pfaehler* and *Christopher L. Harlow* of *Sonnenschein, Nath & Rosenthal LLP*, of counsel), for respondents.

*Leonard J. Feldman* and *Jason T. Morgan* on behalf of American Association of Orthopedic Surgeons, American College of Surgeons, American Medical Society for Sports Medicine, and American Urological Association, amici curiae.

*Howard M. Goodfriend* and *John J. Bennett* on behalf of American Physical Therapy Association, amicus curiae.

*Jay A. Goldstein* on behalf of Physical Therapy Association of Washington Inc., amicus curiae.

*Kristiana F. O'Brien* and *Scott Easter* on behalf of The Washington Academy of Eye Physicians and Surgeons, The American Medical Association, The American Society of Anesthesiologists, The Benton-Franklin County Medical Society, The Clark County Medical Society, The Northwest Academy of Otolaryngology, The Pierce County Medical Society, The Spokane County Medical Society, The Thurston-Mason County Medical Society, The Walla Walla Valley Medical Society, The Washington Academy of Family Physicians, The Washington Chapter of the American Academy of Pediatrics, The Washington Osteopathic Medical Association, The Washington Society of Physical Medicine &

Rehabilitation, The Washington State Medical Association, The Washington State Medical Group Management Association, The Washington State Psychiatric Association, The Washington State Society of Anesthesiologists, The Yakima County Medical Society, Washington State Chiropractic Association, and Whatcom County Medical Society, amici curiae.

*Emily Studebaker* on behalf of Washington Ambulatory Surgery Center Association, amicus curiae.

¶1 OWENS, J. — Columbia Physical Therapy Inc. (Columbia), a professional service corporation owned by a group of physical therapists, brought this action against Benton Franklin Orthopedic Associates (BFOA), a professional limited liability company owned by physicians and employing physical therapists. Columbia asserts that BFOA and its doctors and physical therapists are violating (1) the corporate practice of medicine doctrine; (2) The Professional Service Corporation Act (PSCA), chapter 18.100 RCW; (3) the antirebate statute, chapter 19.68 RCW; and (4) the Consumer Protection Act (CPA), chapter 19.86 RCW. The statutory law has developed and evolved around the existing common law and carefully balances the competing interests at stake in the delivery of health care services. For the reasons discussed below, BFOA is entitled to summary judgment on Columbia's claims under the corporate practice of medicine doctrine, the PSCA, and the antirebate statute. We also affirm the trial court's denial of BFOA's summary judgment motion with respect to Columbia's CPA claim.

## FACTS

¶2 BFOA is a professional limited liability company owned by five members, all of whom are licensed to practice

medicine in the state of Washington.[1] In 2003, three of these physicians served as the officers and exclusive shareholders of the newly incorporated Benton Franklin Physical Therapy, Inc. (BFPT). In 2004, BFPT ceased to operate as an independent corporation and began to operate as part of BFOA but continued to do business under the name Benton Franklin Physical Therapy.

¶3  BFOA currently employs three physical therapists at BFPT who work in a separate facility from the physicians. In 2006, BFOA referred approximately 33 percent of its patients to physical therapists at BFPT. This constituted around 86 percent of BFPT's clients. When referring patients to physical therapy, BFOA claims to advise patients, both verbally and in writing, of their ownership interest in BFPT and to provide patients with a list of other physical therapy providers. Columbia has produced some evidence that, when a patient told his BFOA physician that he wanted a referral to a physical therapist at Columbia, the physician said he could not provide a referral anywhere other than BFPT. Columbia also produced evidence that another patient asked a BFOA physician where to go with his physical therapy referral and the physician pointed to BFPT.

¶4  Columbia sued BFOA and its physician-members and physical therapists. Columbia's lawsuit consisted of four claims: (1) violation of the corporate practice of medicine doctrine, (2) violation of the PSCA, (3) violation of the antirebate statute, and (4) violation of the CPA. Columbia and BFOA both moved for summary judgment on each of the claims, except for the CPA claim, on which only BFOA moved for summary judgment. The trial court granted BFOA's motion for summary judgment on the PSCA claim and denied BFOA's motions for summary judgment on the CPA and antirebate statute claims. The trial court denied Columbia's motion for summary judgment with respect to the PSCA and the antirebate statute claims. The court

---

[1] These five will be collectively referred to as the "physician-members" of BFOA.

declined to grant or deny either party's summary judgment motion on the application of the corporate practice of medicine claim. Pursuant to stipulation by the parties, the trial court certified the issues to the Court of Appeals, which denied review. The parties then filed a joint motion for review with this court, which we granted as to four issues. *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs.*, 164 Wn.2d 1008, 196 P.3d 130 (2008).

## ISSUES

¶5 1. Does BFOA violate the corporate practice of medicine doctrine?

¶6 2. Does BFOA violate the PSCA?

¶7 3. Do BFOA's employees violate the antirebate statute?

¶8 4. Did BFOA violate the CPA?

## STANDARD OF REVIEW

¶9 We review summary judgment orders and the meaning of statutes de novo. *Wright v. Jeckle*, 158 Wn.2d 375, 379, 144 P.3d 301 (2006) (meaning of statutes); *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (summary judgment orders). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." CR 56(c). All facts and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Hisle*, 151 Wn.2d at 860-61.

## ANALYSIS

I. The Corporate Practice of Medicine Doctrine and the PSCA

¶10 Columbia asserts that BFOA has violated both the corporate practice of medicine doctrine and the PSCA.

Though these are independent causes of action, they are closely related and we therefore combine our analysis of the two claims. Because we find that the PSCA authorizes BFOA's employment of physical therapists, there is no violation of either the PSCA or the corporate practice of medicine doctrine. As a result, Columbia's claims under the corporate practice of medicine doctrine and the PSCA both fail as a matter of law and BFOA is entitled to summary judgment.

¶11 The corporate practice of medicine doctrine provides that, absent legislative authorization, a business entity may not employ medical professionals to practice their licensed professions. This doctrine is derived of much broader principles "addressed by both the statutory and common law of Washington." *Morelli v. Ehsan*, 110 Wn.2d 555, 558, 756 P.2d 129 (1988). In the abstract, these broader principles are relatively straightforward. The practice of certain professions requires a license. *See, e.g.*, RCW 18.71.021 (medicine); RCW 18.74.150 (physical therapy). A person or entity practices a profession by either directly engaging in statutorily defined conduct or by employing a licensed individual to engage in such conduct. *See Morelli*, 110 Wn.2d at 561; *State ex rel. Standard Optical Co. v. Superior Court*, 17 Wn.2d 323, 328-33, 135 P.2d 839 (1943). The legislature may, of course, authorize exceptions to this general scheme. This interpretation of the corporate practice of medicine doctrine is supported by legislative acquiescence, RCW 18.100.030(1) (stating that prior to the passage of the PSCA, certain professional services could not be performed by corporations), and earlier precedent of this court, *Deaton v. Lawson*, 40 Wash. 486, 489-90, 82 P. 879 (1905); *State ex rel. Lundin v. Merchs. Protective Corp.*, 105 Wash. 12, 17-18, 177 P. 694 (1919).

¶12 Two cases are instructive in understanding the application of the corporate practice of medicine doctrine: *Standard Optical*, which addresses a corporation employing an optometrist, and *Morelli*, which addresses a partnership employing a physician. In *Standard Optical*, a corporation

employed a licensed optometrist who engaged in the practice of optometry in the course of business. 17 Wn.2d at 325-26. The practice of optometry was limited by statute to licensed persons. *Id.* at 327. Though noting that the corporation exercised no control over the optometrist's professional judgment, this court nonetheless held that the corporation impermissibly engaged in the practice of optometry by employing the optometrist. *Id.* at 326, 328-33. As justification for its holding, this court cited a decision by the South Carolina Supreme Court, which argued that the commercialization of professions would destroy professional standards and that the duties of professionals to their clients are incompatible with the commercial interests of business entities. *Id.* at 331-32 (quoting *Ezell v. Ritholz*, 188 S.C. 39, 198 S.E. 419, 424 (1938)). At bottom, the doctrine exists to protect the relationship between the professional and the client.

¶13 In *Morelli*, a physician and a nonphysician entered into a limited partnership agreement and operated a medical clinic together. 110 Wn.2d at 556. In the course of finding that the partnership was illegal, we noted that "the common law rule that a corporation cannot engage in the practice of a learned profession through licensed employees unless legislatively authorized." *Id.* at 561. We then proceeded to extend that rule to limited partnerships. *Id.*

¶14 BFOA disagrees with this understanding of the corporate practice of medicine doctrine, arguing that the doctrine restricts only who may *own* a medical practice and does not address whom that practice may employ. In support of this conclusion, BFOA cites language in *Morelli* indicating that the court was there concerned with lay participation in professional services, *see id.* at 562. To be sure, this is one evil the doctrine seeks to avoid, but, as discussed above, this court expressed much broader concerns in *Standard Optical*. We reject BFOA's argument and adhere to the traditional understanding that the corporate practice of medicine doctrine forbids employment of health care professionals by business entities or nonprofessionals absent legislative authorization.

¶15 In the present case, there is no dispute that BFOA is a business entity that employs licensed health care professionals. Applying the principles of the corporate practice of medicine doctrine, this establishes that BFOA is engaged in the practice of medicine and physical therapy. This is impermissible absent legislative authorization. The parties disagree as to whether any statute authorizes BFOA's employment of physical therapists.[2]

■ ¶16 In 1969, the legislature enacted the PSCA and thereby carved out "a narrow statutory exception" to the general rule prohibiting corporations from practicing learned professions. *Id.* at 561. The PSCA contains two provisions of potential importance here.[3] First, BFOA argues that RCW 18.100.050(1) authorizes its employment of physical therapists:

> An individual or group of individuals duly licensed . . . to render the same professional services within this state may organize and become a shareholder or shareholders of a professional corporation for pecuniary profit under the provisions of Title 23B RCW for the purpose of rendering professional service.

Second, Columbia argues that RCW 18.100.080 prohibits BFOA's employment of physical therapists:

> No professional service corporation organized under this chapter shall engage in any business other than the rendering of the professional services for which it was incorporated.

In deciding between these mutually exclusive readings of the statute, we are guided by familiar principles of statutory interpretation.

■ ■ ¶17 Our purpose in interpreting a statute is " 'to discern and implement the intent of the legislature.' " *City of Olympia v. Drebick,* 156 Wn.2d 289, 295, 126 P.3d 802

---

[2] Because we find the PSCA argument dispositive, we do not address BFOA's argument that RCW 74.09.240(3)(a) is an independent legislative authorization for its employment of physical therapists.

[3] The provisions of the PSCA apply to professional limited liability companies under the express terms of RCW 25.15.045(1).

(2006) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)). Our first inquiry is whether, looking to the entire statute in which the provision is found and to related statutes, the meaning of the provision in question is plain. *Cosmopolitan Eng'g Grp., Inc. v. Ondeo Degremont, Inc.*, 159 Wn.2d 292, 298-99, 149 P.3d 666 (2006). If so, our inquiry is at an end. *Estate of Haselwood v. Bremerton Ice Arena, Inc.*, 166 Wn.2d 489, 498, 210 P.3d 308 (2009). If, however, the statute is susceptible to more than one reasonable interpretation, it is ambiguous, and we " 'may resort to statutory construction, legislative history, and relevant case law.' " *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)). It is also true that "[w]henever possible, statutes must be read in harmony and each must be given effect." *Livingston v. Cedeno*, 164 Wn.2d 46, 52, 186 P.3d 1055 (2008). With these principles in mind, we turn to the task of interpreting the PSCA as it applies to the present case.

¶18 Beginning with the prohibition provided in RCW 18.100.080, the prohibited conduct is "engag[ing] in any business other than the rendering of the professional services for which [the professional service corporation] was incorporated." The question that immediately presents itself is what professional services a professional service corporation is incorporated to render. At the outset, we reject the proposition that this is solely determined by a corporation's articles of incorporation. A professional service corporation composed of dentists could not, for instance, state in its articles of incorporation that it is incorporated to render dental and legal advice and thereby be permitted to practice both dentistry and law. In coming to the proper interpretation, we turn to related provisions of the same statute.

¶19 Two provisions in chapter 18.100 RCW provide insight as to what professional services a professional service corporation is incorporated to render. In RCW 18.100.010, the legislature declared that its intent in passing the PSCA was "to provide for the incorporation of an individual or

group of individuals to render the same professional service to the public for which such individuals are required by law to be licensed or to obtain other legal authorization." In RCW 18.100.050(1), the legislature authorizes the formation of a professional service corporation by professionals "duly licensed or otherwise legally authorized to render the same professional services . . . for the purpose of rendering professional service." Reading the relevant provisions in harmony, it is clear that the professional services for which a professional service corporation is incorporated, and in which it may therefore engage, are those for which the shareholders (or, in the case of a professional limited liability company, members, RCW 25.15.045(3)) are licensed. Thus, under RCW 18.100.080, BFOA may not engage in any business other than the rendering of the professional service that its members are licensed to practice: medicine.

¶20 BFOA argues that the PSCA is concerned with only who may own a professional service corporation, not whom that corporation may employ. The PSCA, however, addresses both. Multiple sections address what services the professional service corporation may render. RCW 18-.100.010, .050(2)-(5), .060, .065, .080. A corporation renders services through its employees. Thus, the PSCA impacts whom the corporation may employ.

¶21 Whether BFOA violates the PSCA therefore comes down to a single question: does it engage in any business other than the practice of medicine? Columbia argues that by employing physical therapists, BFOA is engaged in the practice of physical therapy, which Columbia contends is a different professional service. Columbia's argument relies chiefly on the fact that the practice of medicine and the practice of physical therapy are governed by different chapters of the RCW. Medicine is governed by chapter 18.71 RCW, while physical therapy is governed by chapter 18.74 RCW. Columbia argues that this fact establishes that medicine and physical therapy are separate professional services. Columbia misunderstands the statutory interplay of these professions.

¶22 Physical therapy is one aspect of the practice of medicine. The practice of medicine is defined by RCW 18.71.011(1) as "[o]ffer[ing] or undertak[ing] to diagnose, cure, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." This broad definition readily encompasses all the acts constituting the statutory definition of the practice of physical therapy. RCW 18.74.010(8). The physical therapy licensing statute simply permits nonphysicians to engage in a limited practice of medicine without liability for the unauthorized practice of medicine. *Cf.* RCW 18.71.030(4) (providing that the prohibition on the unauthorized practice of medicine does not prohibit the practice of any healing art for which the practitioner is licensed). The upshot is that physical therapy is part of the practice of medicine and, by extension, part of "the same professional service . . . for which" BFOA's members are licensed. RCW 18.100.010. The practice of medicine is the purpose for which BFOA was incorporated and, even when employing physical therapists, BFOA does not engage in any business other than the practice of medicine. As such, BFOA's employment of physical therapists does not violate RCW 18.100.080 but is instead authorized by RCW 18.100.050(1), which allows the creation of a professional service corporation for the purpose of rendering the same professional service for which its organizers are duly licensed.

¶23 Our conclusion that the practice of physical therapy is included within the practice of medicine, as those terms are defined by the legislature, is reinforced by other statutory provisions. First, the physical therapy licensing statute expressly provides that "[n]othing in this chapter prohibits any person licensed in this state under any other act from engaging in the practice for which he or she is licensed." RCW 18.74.090(1). This contemplates that other professionals are licensed to perform acts overlapping with or including those that physical therapists are licensed to perform. Second, the legislature knew how to create a field

of the healing arts that does not fall within the practice of medicine. The legislature specifically provided, within the definition of the practice of medicine, that "a person licensed under this chapter shall not engage in the practice of chiropractic as defined in RCW 18.25.005." RCW 18.71.011(4). This resulted in chiropractic being a distinct practice separate from the practice of medicine, not a mere subset of it. The legislature has not created a similar provision with respect to physical therapy.

¶24 In an effort to avoid this result, Columbia makes three additional arguments: that the use of the term "physical therapy" means it is a separate professional service, that professional services are not the "same" unless they are coextensive, and that RCW 18.100.050(5) is a legislative determination that the practices of medicine and physical therapy are separate professional services. None of these arguments are availing.

■ ■ ¶25 First, Columbia points to RCW 18.74.090(1), which prohibits the use of the term "physical therapy" in connection with the name of any person not licensed as a physical therapist pursuant to that chapter. Columbia has not asserted a violation of RCW 18.74.090(1) as one of its claims. The question, therefore, is whether, by using the term "physical therapy" in connection with its business, it is engaged in a separate business from the practice of medicine, notwithstanding the fact the practice of medicine includes the acts constituting physical therapy. We do not read RCW 18.74.090(1) to stand for the proposition that calling an activity "physical therapy" is a separate professional service while performing the acts constituting physical therapy is not a separate professional service. We avoid such strained readings of statutes. *State v. Neher*, 112 Wn.2d 347, 351, 771 P.2d 330 (1989).

■ ¶26 Second, Columbia argues that physical therapy and medicine cannot be the same professional service because, while medicine includes physical therapy, physical therapy does not include medicine. In other words, Columbia argues that to be the same professional service, two

professions must be coextensive. This reasoning misses the point. Nothing in the PSCA requires that the professional services performed by the business be the "same professional service." Instead, it requires that the individuals organizing the business entity be licensed to render the same professional service, RCW 18.100.050(1), and prohibits the professional service corporation from engaging in any business other than that for which the business was organized (i.e., any business other than that professional service for which its owners are licensed), RCW 18.100.080. The important fact is not that physical therapy and medicine are the "same" professional service, but rather that physical therapy falls within the "same professional service" for which the owners of BFOA are licensed.

¶27  Finally, Columbia argues that RCW 18.100-.050(5), which places those licensed to practice medicine in a separate list from those licensed to practice physical therapy, amounts to a legislative determination that medicine and physical therapy may not be practiced by a single professional service corporation. RCW 18.100.050(5)[4] creates two lists of licensed professional services and provides that persons licensed pursuant to the listed chapters "may own stock in and render their individual professional services through one professional service corporation" with others licensed pursuant to statutes in the same list. Importantly, physicians are listed in subsection (a) but not subsection (b); physical therapists are not listed in subsection (a) but are listed in subsection (b). The legislation creating these lists of licensed professionals who "may own stock in and render their professional services through a single professional service corporation" was first enacted in 1996[5] and had the effect of broadening the professions that could come together and form a single professional service

---

[4] Identical lists appear in the Washington Limited Liability Company Act, RCW 25.15.045(6), but this opinion discusses them in the context of the PSCA for consistency and to read the PSCA provisions in pari materia.

[5] Physical therapists are included as a result of a 1999 amendment to the statute. LAWS OF 1999, ch. 128, § 1.

corporation. *See* LAWS OF 1997, ch. 390, § 3. This, in turn, broadened the professional services that a single professional service corporation could provide. That is, these lists do not, as Columbia suggests, *limit* the services that a single professional service corporation may provide but rather *broaden* those services. As a result, RCW 18.100-.050(5) does not alter our conclusion.

¶28 In sum, the PSCA does not prohibit BFOA's employment of physical therapists. In employing physical therapists, BFOA does not go beyond the practice of medicine, the professional service for which it was formed. Moreover, RCW 18.100.050(1) authorizes BFOA's employment of physical therapists, since it permits the formation of a professional limited liability company to render the professional service—medicine—for which its members are licensed. As there is legislative authorization for BFOA's employment of physical therapists, BFOA does not violate the corporate practice of medicine doctrine. We therefore affirm the trial court's grant of summary judgment to BFOA on Columbia's PSCA claim and direct the trial court to enter summary judgment for BFOA on Columbia's common law corporate practice of medicine claim.

II. The Antirebate Statute

¶29 Columbia's third claim is that the physician-members and the physical therapists of BFOA violate the antirebate statute, chapter 19.68 RCW, by receiving and paying unearned profits. Though the antirebate statute applies to a referring physician with an ownership interest in the business to which patients are referred, *Day v. Inland Empire Optical, Inc.*, 76 Wn.2d 407, 456 P.2d 1011 (1969), the statute exempts from its coverage profits earned by an employee of a firm and flowing to the firm's owners, provided the owners practice in the firm, RCW 19.68.040.

As such, BFOA is entitled to summary judgment on Columbia's antirebate statute claim.[6]

¶30 Though we have previously noted that the antirebate statute is "not a model of clarity by any means," we have nonetheless determined that it prohibits both paying and receiving anything of value, including unearned profits, in return for a referral of patients. *Wright*, 158 Wn.2d at 381. The benefit of such a law is that it discourages unnecessary referrals, thereby lowering health care costs. Our most extensive and on-point discussion of the statute came in *Day*. In *Day*, a group of ophthalmologists practiced together in the Spokane Eye Clinic, a medical partnership. 76 Wn.2d at 410. Those ophthalmologists also owned all the capital stock of the Inland Empire Optical Company, which was located on the lower floor of the same building and operated an optical dispensing business, employing four licensed dispensing opticians. *Id.* In the eye clinic, the ophthalmologists advertised on a sign that they owned an optical shop downstairs but that patients were free to take their prescriptions to other opticians. *Id.* at 412. The court in *Day* found that this arrangement violated the antirebate statute, reasoning that the sign constituted a referral by the ophthalmologists and that any benefit to Inland Empire Optical ultimately benefited its owners. *Id.* at 418-19.

¶31 The present case largely parallels *Day*. The physician-owners of BFOA refer patients to physical therapists employed by a business entity owned by the referring physicians, and the owners thereby benefit from the referral. Without more, this would violate the antirebate statute since any profit from the work by the physical therapists would, absent the exception contained in RCW 19.68.040, be unearned as to the referring physicians. A physician may receive compensation only for services rendered by that particular physician. RCW 19.68.040.

---

[6] As we determine that the antirebate statute does not prohibit the BFOA referrals based on RCW 19.68.040, we decline to address whether the exception for diagnostic services in RCW 19.68.010(2) applies.

¶32 Unlike *Day*, which involved two entirely distinct entities, the referring physician-members here provided their own professional services through the same firm as the physical therapists to whom they referred patients. RCW 19.68.040 instructs that the chapter is "not intended to prohibit two or more licensees who practice their profession as copartners to charge or collect compensation for any professional services by any member of the firm." The antirebate statute was enacted in 1949. At that time, 20 years prior to passage of the PSCA, the corporate practice of medicine doctrine prohibited corporations from practicing medicine through their employees. As such, the only business arrangement under which two or more licensees could practice together was a partnership. The PSCA expressly provides that professional service corporations remain subject to the antirebate statute, RCW 18.100.140, thereby establishing that the antirebate statute's terms are no longer limited to partnerships. In line with basic principles of statutory interpretation, we read the antirebate statute in harmony with the PSCA. Doing so, it becomes clear that the legislature did not intend to prohibit licensees practicing their profession together through a lawful business arrangement from receiving compensation for the professional services of other members of the firm. The result is that profits from professional services rendered by employees of a firm are not "unearned" by the owners, as that term is used in RCW 19.68.010(1), so long as the owners practice as part of that firm. The physician-members of BFOA do practice as part of the firm and thus any profit they receive from their referrals to BFOA-employed physical therapists is not "unearned" and, therefore, not barred by the antirebate statute.

¶33 The trial court declined to grant BFOA's summary judgment motion on the antirebate statute claim because it believed that there remained a question of fact as to whether BFOA physicians adequately supervised the physical therapists employed by BFOA, and Columbia advances that argument here. The antirebate statute, how-

ever, contains no supervision requirement. The mistaken belief to the contrary appears to stem from a misreading of *Day*. In *Day*, the court first determined that the referrals by the ophthalmologists ran afoul of the prohibitions in RCW 19.68.010 and .020. 76 Wn.2d at 418-19. It then noted, however, that a separate statute, RCW 18.34.010, specifically permitted employment of a licensed optician by an ophthalmologist, provided the ophthalmologist provided "personal supervision" of the optician. *Id.* at 419-20. The court then determined that in order for the ophthalmologists in that case to take advantage of RCW 19.68.040, they would have to demonstrate that they met the requirements of RCW 18.34.010 (i.e., that they personally supervised the opticians). *Id.* It was a separate statute that imposed a personal supervision requirement in *Day*, not the antirebate statute. There is no independent personal supervision requirement in either the PSCA or chapter 18.74 RCW. BFOA physicians therefore need not show that they personally supervised the physical therapists employed by BFOA.

¶34 In sum, even construing all material facts in the light most favorable to Columbia, BFOA physicians and physical therapists have not violated the antirebate statute. On remand, the trial court is directed to enter summary judgment for BFOA physicians and physical therapists on Columbia's antirebate statute claim.

III. The CPA

¶35 The final issue we consider in this case is whether BFOA has violated the CPA. On this issue, only BFOA has moved for summary judgment. Columbia argues that BFOA violated the CPA both by engaging in particular acts that were unfair or deceptive and by violating the corporate practice of medicine doctrine, the PSCA, and the antirebate statute. Having already determined that BFOA has not violated these statutes and this doctrine, we confine our analysis to whether, taking the facts in the light most favorable to Columbia, BFOA committed unfair or decep-

tive acts or practices.[7] We conclude that, if found credible, the facts alleged by Columbia would constitute unfair or deceptive acts or practices, and, as a result, BFOA is not entitled to summary judgment on Columbia's CPA claim.

¶36 To establish a violation of the CPA, a private plaintiff must prove five elements: (1) an unfair or deceptive act or practice occurred, (2) the act or practice occurred in the conduct of trade or commerce, (3) the act or practice impacted the public interest, (4) the plaintiff suffered an injury to business or property, and (5) the plaintiff can demonstrate a causal link between the unfair or deceptive act or practice and the injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-93, 719 P.2d 531 (1986). The only element challenged by BFOA before this court is the first one. Whether an action constitutes an unfair or deceptive practice is a question of law. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997). An act is deceptive if it has "the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at 785. Even accurate information may be deceptive " 'if there is a representation, omission or practice that is likely to mislead' a reasonable consumer." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 50, 204 P.3d 885 (2009) (quoting *Sw. Sunsites, Inc. v. Fed. Trade Comm'n*, 785 F.2d 1431, 1435 (9th Cir. 1986)).

¶37 There is evidence in the record of two acts that Columbia claims are unfair or deceptive. The material facts of both are disputed, so we must view them in the light most favorable to Columbia. The first involves a BFOA physician telling a patient who had requested a referral to Columbia that the patient had to receive treatment from BFOA's physical therapists. This undoubtedly has "the capacity to deceive a substantial portion of the public," *Hangman*

---

[7] In the joint motion for discretionary review, the parties also requested that this court interpret the phrase "specifically permitted" in RCW 19.86.170 and determine whether Columbia has standing to raise its CPA claim. These issues were not addressed in briefs to this court by either party nor at oral argument and we therefore decline to address them.

*Ridge*, 105 Wn.2d at 785 (emphasis omitted), into believing that it cannot receive physical therapy elsewhere. It is no answer that the majority of BFOA patients take their referrals elsewhere, for it is conceivable that BFOA physicians make such deceptive representations only to patients with the most lucrative physical therapy referrals or until BFOA's physical therapists have reached capacity. The act of informing patients that they could receive physical therapy only from BFOA physical therapists, if proved, would constitute an unfair or deceptive practice. The act of pointing to BFOA's physical therapy location in response to a patient's question about where he could take the prescription carries a similar implication and would also, absent more, constitute an unfair and deceptive practice.

¶38 In sum, BFOA has failed to show that Columbia's CPA claim fails on the basis alleged since some of the alleged conduct could amount to an unfair or deceptive trade practice. We therefore affirm the trial court's refusal to grant summary judgment to BFOA on Columbia's CPA claim. In order to prevail on remand, Columbia must still demonstrate that the facts it alleges are true and that the remaining *Hangman Ridge* factors apply.

## CONCLUSION

¶39 This case presents numerous issues relating to the important issue of delivery of health care services in the state of Washington. In resolving the matters before us, we have relied upon the intent of the legislature. The legislature remains free to adopt another course should it see fit to do so. With respect to the case before us, we affirm the trial court's grant of summary judgment to BFOA on Columbia's PSCA claim and direct the trial court to enter summary judgment for BFOA on Columbia's corporate practice of medicine doctrine and antirebate statute claims. We affirm the trial court's denial of the remaining summary judgment

motions, including the court's denial of summary judgment on Columbia's CPA claim.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, SANDERS, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.